# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1296-CR & 2018AP1214-W |
| COMPLETE TITLE: | State of Wisconsin, |
| |          Plaintiff-Respondent, |
| |     v. |
| | Raytrell K. Fitzgerald, |
| |          Defendant-Appellant. |
| | |
| | State of Wisconsin ex rel. Raytrell K. Fitzgerald, |
| |          Petitioner-Petitioner, |
| |     v. |
| | Circuit Court for Milwaukee County and the Honorable Dennis R. Cimpl, presiding, |
| |          Respondents. |
| | |
| | ON BYPASS FROM THE COURT OF APPEALS & REVIEW OF DECISION OF THE COURT OF APPEALS |

| | |
|---|---|
| OPINION FILED: | June 13, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 20, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Dennis R. Cimpl |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ROGGENSACK, C.J. concurs, joined by ZIEGLER, J. (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-appellant in 18AP1296-CR, and petitioner-petitioner in 18AP1214-W, there were briefs filed by *Colleen D. Ball*, assistant state public defender. There were oral arguments by *Colleen D. Ball*.

For the plaintiff-respondent, there was a brief filed by *Maura FJ Whelan*, assistant attorney general, with whom on the

brief is *Brad D. Schimel*, attorney general. There was an oral argument by *Maura FJ Whelan*.

For the respondents, there was a brief filed by *Abigail C.S. Potts*, assistant attorney general, with whom on the brief if *Brad D. Schimel*, attorney general. There was an oral argument by *Abigail C.S. Potts*

An amicus curiae brief was filed in 18AP1296-CR on behalf of National Association for Criminal Defense Lawyers, Bazelon Center for Mental Health Law, National Disability Rights Network, and Disability Rights Wisconsin, by *Jeffrey O. Davis*, *James E. Goldschmidt*, *Zachary T. Eastburn*, and *Quarles & Brady LLP*, Milwaukee.

**2019 WI 69**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2018AP1296-CR & 2018AP1214-W
(L.C. No.   2016CF4475)

STATE OF WISCONSIN                    :        IN SUPREME COURT

State of Wisconsin,

       Plaintiff-Respondent,

   v.

Raytrell K. Fitzgerald,

       Defendant-Appellant.

**FILED**

**JUN 13, 2019**

Sheila T. Reiff
Clerk of Supreme Court

State of Wisconsin ex rel. Raytrell K. Fitzgerald,

       Petitioner-Petitioner,

   v.

Circuit Court for Milwaukee County and the Honorable Dennis R. Cimpl, presiding,

       Respondents.


APPEAL from an order of the Circuit Court for Milwaukee County, Dennis R. Cimpl, Circuit Court Judge.  *Vacated*; and REVIEW of a decision of the Court of Appeals.  *Affirmed*.

¶1 REBECCA GRASSL BRADLEY, J. These consolidated cases[1] concern the standard under which a circuit court may order involuntary medication to restore a defendant's competency to proceed in a criminal case and the timing of the automatic stay of such orders established in State v. Scott, 2018 WI 74, 382 Wis. 2d 476, 914 N.W.2d 141. The circuit court ordered Raytrell K. Fitzgerald to be involuntarily medicated pursuant to Wis. Stat. § 971.14 (2017-18)[2] to restore his competency to stand trial on a felony possession-of-a-firearm charge. After the circuit court entered its order, this court released the Scott decision, subjecting involuntary medication orders to an automatic stay pending appeal. Following a hearing on the impact of the Scott decision, the circuit court stayed its involuntary medication order but announced its plan to lift the stay in response to the State's motion. As the case proceeded through the appellate courts, the circuit court never lifted the

---

[1] Our decision resolves two cases, State v. Fitzgerald, 2018AP1296-CR and State ex rel. Fitzgerald v. Circuit Court for Milwaukee Cty., 2018AP1214-W. We decide the merits of 2018AP1296-CR by vacating the circuit court's order. This part of our decision addresses the constitutionality of Wis. Stat. § 971.14 and although the circuit court's order is moot, we declare rights relative to it and vacate the order because it is constitutionally infirm. In 2018AP1214-W, we are equally divided regarding the appropriate disposition and therefore affirm the decision of the court of appeals. We consolidate the cases because the facts and procedural history of each are intertwined and collectively provide necessary background information for a full understanding of our decision.

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

stay. Fitzgerald petitioned the court of appeals for a supervisory writ, arguing that the automatic stay begins upon entry of the involuntary medication order rather than upon filing a notice of appeal as the court of appeals ultimately held. Because the court is equally divided on the writ matter, we affirm the court of appeals decision denying Fitzgerald's petition for a supervisory writ.

¶2 We do, however, address Fitzgerald's challenge to the constitutionality of Wis. Stat. § 971.14 based on its incompatibility with Sell v. United States, 539 U.S. 166 (2003). In Sell, the United States Supreme Court held that in limited circumstances the government may involuntarily medicate a defendant to restore his competency to proceed to trial, and it outlined four factors that must be met before a circuit court may enter an order for involuntary medication. We hold that the standard for ordering involuntary medication set forth in § 971.14(3)(dm) and (4)(b) is unconstitutional to the extent it requires circuit courts to order involuntary medication based on the standard set forth in paragraph (3)(dm), which does not comport with Sell. We conclude circuit courts may order involuntary medication to restore trial competency under § 971.14 only when the order complies with the Sell standard. We vacate the circuit court's order for involuntary medication in this case because it is constitutionally insufficient.

3

I.  BACKGROUND

¶3  In October 2016, the State charged Fitzgerald with possession of a firearm contrary to a harassment injunction.[3] The circuit court ordered a competency evaluation, which showed Fitzgerald suffered from "Schizoaffective disorder" and lacked substantial mental capacity to understand the proceedings or to be of meaningful assistance in his own defense.  In December 2017, the circuit court signed an Order of Commitment for Treatment requesting an assessment for Fitzgerald's participation in the Outpatient Competency Restoration Program (OCRP).  Dr. Brooke Lundbohm, a psychologist, sent the circuit court an OCRP assessment letter in February 2018, concluding that Fitzgerald "is clinically appropriate for the Outpatient Competency Restoration Program at this time and has been admitted to the Program," despite Fitzgerald having a history of refusing to take prescribed medication.  In April 2018, Lundbohm informed the circuit court by letter that Fitzgerald's "status with the Outpatient Competency Restoration Program has changed," and he was "no longer clinically appropriate for participation in" OCRP due to safety concerns.  The letter also noted that Fitzgerald displayed a lack of motivation to participate in the program.  On that basis, the circuit court "deemed [Fitzgerald] no longer clinically appropriate for OCRP," remanded Fitzgerald

---

[3] The charge alleged violations of Wis. Stat. §§ 941.29(1m)(g) and 939.50(3)(g) (2015-16).

4

to the Department of Health Services' (DHS) custody, and ordered a second competency evaluation under Wis. Stat. § 971.14.

¶4  In May 2018, Dr. Ana Garcia, a psychologist, conducted Fitzgerald's second competency evaluation and sent her report to the circuit court.  The report noted Fitzgerald's Schizoaffective Disorder diagnosis and explained he had been "treated with Seroquel (antipsychotic medication) and Benztropine (medication used to treat the side effects of psychotropic medications)."  Garcia reported that when Fitzgerald refused to take his medication while hospitalized, "an injectable version of the medication could not be forced upon him" because no order to medicate involuntarily existed.  If treated with medication, Garcia opined Fitzgerald would "likely . . . be restored to competency within the statutory period," and further noted that Fitzgerald was "incapable of expressing a rational understanding of the benefits and risks of medication or treatment."  Accordingly, Garcia concluded that Fitzgerald was "not competent to refuse medication or treatment," and recommended that treatment continue on an inpatient basis.  As to the anticipated effectiveness of the recommended treatment in restoring Fitzgerald's competency, Garcia noted in her report that "[t]reatment with antipsychotic medication is known to be effective in treating symptoms of psychosis, which is precluding [Fitzgerald's] competence to proceed" in his criminal case.

¶5  On June 18, 2018, the circuit court held a hearing on whether to issue an order for involuntary medication under Wis.

5

Stat. § 971.14. During that hearing, Garcia testified, explaining why she believed the circuit court should issue an order for involuntary medication:

- "Fitzgerald has continued to exhibit indications of psychotic symptoms" and was "unable to discuss his charges in a reasonable way."

- "[W]e find psychotropic medication to help him better organize his thoughts, reduce the auditory hallucinations, and reduce the delusional beliefs."

- Fitzgerald refused to take his medications and attempted to hide them in his room.

Garcia testified that "as a psychologist, I don't prescribe specific medications" but "I do know that for treating schizophrenia and schizoaffective disorder, the primary treatment is an antipsychotic medication, and he had been prescribed" the generic version of Seroquel during his admission at Mendota Mental Health Institute.

¶6 Fitzgerald also testified at the hearing. He thought he had been misdiagnosed, explained he had "been feeling really fine" without medication, and stated that he did not wish to submit to forced medication, expressing concerns about the dosage.

¶7 After the close of testimony, the circuit court ordered the administration of involuntary medication to restore Fitzgerald's competency. The circuit court explained the basis for its order:

[T]here is an important government interest at stake here and that is the fact that he's charged with a serious felony. It may be a status offense, but the fact is he is alleged to be carrying a gun while under a prohibition for carrying a gun, and I recall the motion hearing that we had in this matter when the police approached him and searched him, which I found was a valid search. And so, therefore, that is in my opinion an important government interest, the furtherance of this felony.

The fact that he does not take his medication is not facilitating him to be restored to competency. That's what this is all about so he can stand trial on whether or not he is guilty of this very serious offense; therefore, the fact that he's not taking his meds and has to be given them involuntarily does further that interest and I think it's also a necessary reason to further that interest. And we've got testimony from Dr. Garcia, who has reviewed his psychiatrist [sic] that the two meds or the medication that is prescribed for him is appropriate, and it was appropriate back in earlier 2013, when he was not taking and engaged in violence with his mother.[4]

---

[4] Although the circuit court also listed several violent incidents outlined in Garcia's report and opined that "those things that I've read into the record I think exhibit that Mr. Fitzgerald, while not on the prescribed medications, is dangerous to himself and to others," the circuit court's written order for involuntary medication was not based on Fitzgerald's dangerousness. Rather, the circuit court checked the box on the form order reflecting the following grounds for involuntary medication: Fitzgerald was "mentally ill" and "charged with at least one serious crime," and the treatment was (1) "necessary to significantly further important government interests," (2) "substantially likely to render the defendant competent to stand trial," (3) "substantially unlikely to have side effects that undermine the fairness of the trial," (4) "necessary because alternative, less intrusive treatments are unlikely to achieve substantially the same results," and (5) "medically appropriate." The circuit court did not check the box indicating treatment was necessary because Fitzgerald was dangerous.

7

¶8 On June 20, 2018, before Fitzgerald filed his notice of intent to pursue postdisposition relief, this court decided Scott, 382 Wis. 2d 476. In Scott, we exercised our superintending authority to "order that involuntary medication orders [under Wis. Stat. § 971.14] are subject to an automatic stay pending appeal." Id., ¶43. On June 25, 2018, Fitzgerald filed his "Notice of Intent to Pursue Postdisposition Relief" and two days later filed a letter informing the circuit court that his medication order was automatically stayed under Scott.[5]

¶9 On June 27, 2018, the circuit court held another hearing. The circuit court granted the stay, but indicated that it would immediately lift the stay on the State's motion. On June 28, 2018, the same day Fitzgerald filed his petition for a supervisory writ in the court of appeals, the circuit court "vacate[d] the [June 27] proceedings" related to the automatic stay. The circuit court expressed uncertainty as to whether Scott's automatic stay occurs "after the appeal is filed or is it automatic when there's a notice of intent to appeal filed or is it automatic if there's merely an allegation that the defendant is going to file an appeal." In order to "err on the side of caution," the circuit court ordered its June 18th involuntary medication order stayed and set the matter to be

---

[5] The letter is dated June 25, 2018, and marked "Received 06-25-2018" in the upper right corner. Counsel asserts in the letter that it was being filed "simultaneously" with the Notice of Intent, but according to the electronic record, the letter was not filed until June 27, 2018.

8

heard again in two weeks. The circuit court reasoned: "[i]f the appeal is not filed I will lift the stay because then clearly [the] Scott case doesn't apply," and "[i]f the appeal is filed the State can then file a motion to lift the stay." The circuit court then signed a written order granting a stay of the June 18th involuntary medication order, but on that same day, Fitzgerald filed a petition for a supervisory writ in the court of appeals, challenging the circuit court's plan to lift the automatic stay without requiring the State to make the showing required under Scott. On July 9, 2018, Fitzgerald also filed a separate notice of appeal seeking review of the circuit court's June 18th Order for Commitment, specifically challenging the order for involuntary administration of medication.

¶10 On July 12, 2018, the court of appeals denied Fitzgerald's petition for a supervisory writ. State ex rel. Fitzgerald v. Circuit Court for Milwaukee Cty., No. 2018AP1214-W, unpublished order (Wis. Ct. App. July 12, 2018). Because the circuit court's stay remained in effect, the court of appeals concluded that "to the extent Scott establishes the automatic stay as a plain duty, the circuit court has complied." Id. at 5. However, the court of appeals also concluded that "Fitzgerald was not entitled to an automatic stay until he actually had a pending appeal, and that did not happen until he filed the notice of appeal on July 9, 2018." Id. (emphasis added). Fitzgerald petitioned for review of the court of appeals decision denying a supervisory writ, which we granted. Fitzgerald also petitioned to bypass the court of appeals for

9

review of the June 18th underlying medication order, and we granted the bypass petition and ordered both cases to be argued on March 20, 2019.

¶11  Before this court heard oral argument in Fitzgerald's cases, the circuit court found Fitzgerald competent and resumed the criminal proceedings.  Fitzgerald pled guilty to the underlying charge on January 11, 2019, and the circuit court sentenced him to time served.  Consequently, the State moved to dismiss as moot both of Fitzgerald's cases, but we denied the motion.  After oral argument, we consolidated the two cases for the purposes of disposition.

## II.  DISCUSSION

### A.  Standard of Review

¶12  The sole issue we resolve is the constitutionality of the standard for involuntary medication under Wis. Stat. § 971.14(3)(dm) and (4)(b).  This court presumes the constitutionality of a statute and tasks a party challenging it with the "very heavy burden" of proving its unconstitutionality "beyond a reasonable doubt."  Mayo v. Wisconsin Injured Patients and Families Comp. Fund, 2018 WI 78, ¶¶25, 27, 383 Wis. 2d 1, 914 N.W.2d 678 (quoted source omitted).  Citing Mayo, Fitzgerald urges us to "restore the balance of [constitutional] power between the judiciary and the legislature in Wisconsin" by employing the standard applied by the United States Supreme Court, which requires a "plain showing" or clear demonstration of unconstitutionality.  See id., ¶¶79, 90 (Rebecca Grassl Bradley, J. concurring) (quoted source omitted).  We need not

10

resolve Fitzgerald's challenge to the prevailing standard of review for challenges to the constitutionality of a statute because § 971.14(3)(dm) and (4)(b) are undoubtedly unconstitutional to the extent they require a circuit court to order the involuntary medication of a defendant when the Sell factors have not been met.

## B. Analysis

### 1. Constitutional Principles

¶13 Under the Due Process Clause, individuals have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." Washington v. Harper, 494 U.S. 210, 221 (1990). "[O]nly an 'essential' or 'overriding' state interest" can overcome this constitutionally-protected liberty interest. Sell, 539 U.S. at 178-79 (quoting Riggins v. Nevada, 504 U.S. 127, 134 (1992)). In Sell, the United States Supreme Court addressed "whether the Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant——in order to render that defendant competent to stand trial for serious, but nonviolent, crimes." Sell, 539 U.S. at 169. The Court held that it does, but only under particular circumstances:

> [T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is

11

necessary significantly to further important governmental trial-related interests.

Id. at 179 (emphasis added). Although permissible in certain situations, the Sell Court explained that the "administration of drugs solely for trial competence purposes . . . may be rare." Id. at 180. The Court established a four-factor test to determine whether such medication is constitutionally appropriate.

¶14 "First, a court must find that important governmental interests are at stake." Id. "[B]ringing to trial an individual accused of a serious crime" against a person or property is an important interest. Id. The Court did, however, emphasize that prior to entering an order for involuntary medication, courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution." Id.

¶15 "Second, the court must conclude that involuntary medication will significantly further" the government's interest in prosecuting the offense. Id. at 181. This means that a court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial" and "unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Id.

¶16 "Third, the court must conclude that involuntary medication is necessary to further those interests." Id. In

12

other words, "[t]he court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." Id. In order to make this finding, the deciding court "must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods." Id. In other words, the Sell Court considered an order directed at the defendant, requiring him to accept medication or be found in contempt of court, to be less intrusive than ordering an entity like DHS to forcibly administer medication to the defendant.

¶17 "Fourth, . . . the court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." Id. The Sell Court explained that "[t]he specific kinds of drugs at issue may matter here as elsewhere" because "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." Id.

¶18 The Court explained that "these standards . . . seek[] to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the interest in rendering the defendant competent to stand trial," and "[a] court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a different purpose, such as [one] . . . related to the individual's dangerousness, or . . . health." Id. at 181-82. The Court explained that "[t]here are often strong reasons for a court to determine

13

whether forced administration of drugs can be justified on these alternative grounds before turning to the trial competence question," in part because "the inquiry into whether medication is permissible, say, to render an individual nondangerous is usually more 'objective and manageable' than the inquiry into whether medication is permissible to render a defendant competent." Id. at 182 (quoted source omitted).

> The medical experts may find it easier to provide an informed opinion about whether, given the risk of side effects, particular drugs are medically appropriate and necessary to control a patient's potentially dangerous behavior (or to avoid serious harm to the patient himself) than to try to balance harms and benefits related to the more quintessentially legal questions of trial fairness and competence.

Id.

### 2. Wisconsin Stat. § 971.14

¶19 Wisconsin Stat. § 971.14 requires a circuit court to enter an order for involuntary medication to restore a criminal defendant's competency to proceed provided the statutory parameters are met. Under the statute, the circuit court shall order a competency examination if "there is reason to doubt a defendant's competency to proceed." § 971.14(1r)(a), (2). The circuit court appoints "one or more examiners having the specialized knowledge determined by the court to be appropriate to examine and report upon the condition of the defendant." § 971.14(2)(a). "The examiner shall submit to the court a written report." § 971.14(3). Among other things, the report must include:

14

(c) The examiner's opinion regarding the defendant's present mental capacity to understand the proceedings and assist in his or her defense.

(d) If the examiner reports that the defendant lacks competency, the examiner's opinion regarding the likelihood that the defendant, if provided treatment, may be restored to competency within the time period permitted under sub. (5)(a). . . .

(dm) If sufficient information is available to the examiner to reach an opinion, the examiner's opinion on whether the defendant needs medication or treatment and whether the defendant is not competent to refuse medication or treatment. The defendant is not competent to refuse medication or treatment if, because of mental illness, developmental disability, alcoholism or drug dependence, and after the advantages and disadvantages of and alternatives to accepting the particular medication or treatment have been explained to the defendant, one of the following is true:

1. The defendant is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives.

2. The defendant is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment.

§ 971.14(3)(c)-(dm) (emphasis added).

¶20 After the report's submission, the circuit court must hold a hearing. Wis. Stat. § 971.14(4). Unless the parties waive their opportunity to present additional evidence, the circuit court shall hold an evidentiary hearing. § 971.14(4)(b). If the State proves by clear and convincing evidence "that the defendant is not competent to refuse

15

medication or treatment, under the standard specified in sub. (3)(dm), the court shall make a determination without a jury and issue an order that the defendant is not competent to refuse medication or treatment." § 971.14(4)(b) (emphasis added).[6] In other words, the circuit court "shall" order involuntary medication or treatment if the standard described in § 971.14(3)(dm) is met: either the defendant is "incapable of expressing an understanding of the advantages and disadvantages" of medication or treatment or "substantially incapable of applying an understanding of" his mental illness "in order to make an informed choice" "to accept or refuse medication or treatment." The statute additionally provides "whoever administers the medication or treatment to the defendant shall observe appropriate medical standards." § 971.14(4)(b).

3. Wisconsin Stat. § 971.14(3)(dm) and (4)(b) do not conform with Sell's constitutional parameters.

¶21 As a preliminary matter, we explain this court's denial of the State's motion to dismiss Fitzgerald's cases on mootness grounds. "An issue is moot when its resolution will have no practical effect on the underlying controversy." Portage Cty. v. J.W.K., 2019 WI 54, ¶11, ___ Wis. 2d ___, ___ N.W.2d ___ (quoted source omitted); see also City of Racine v.

---

[6] When a defendant claims to be competent, Wis. Stat. § 971.14(4)(b) first requires the State to prove by clear and convincing evidence that the defendant is not competent. Because Fitzgerald previously conceded he was not competent, that portion of the statute is not at issue.

16

J-T Enters. of Am., Inc., 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974) ("This court has consistently adhered to the rule that a case is moot when 'a determination is sought which, when made, cannot have any practical effect upon an existing controversy.'" (quoted source omitted)). As a general matter, we decline to reach moot issues. J.W.K., __ Wis. 2d __, ¶12. Fitzgerald is no longer subject to the medication order he challenges; he regained competency and pled guilty. Therefore, the issues presented in reviewing that order are moot. See Winnebago Cty. v. Christopher S., 2016 WI 1, ¶31, 366 Wis. 2d 1, 878 N.W.2d 109 (explaining that "when an appellant appeals an order to which he or she is no longer subjected," the case is moot).

¶22 We may, however, decide an otherwise moot issue if it fits under one of the following exceptions: (1) "the issues are of great public importance;" (2) "the constitutionality of a statute is involved;" (3) the situation arises so often "a definitive decision is essential to guide the trial courts;" (4) "the issue is likely to arise again and should be resolved by the court to avoid uncertainty;" or (5) the issue is "capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within a time that would result in a practical effect upon the parties." G.S. v. State, 118 Wis. 2d 803, 805, 348 N.W.2d 181 (1984); see also J.W.K., __ Wis. 2d __, ¶12. In this case, Fitzgerald challenges the constitutionality of Wis. Stat. § 971.14, which presents an issue of great public importance. Additionally, competency

17

restoration for the purpose of prosecuting a criminal defendant arises often enough to warrant a definitive decision in order to guide the circuit courts regarding the constitutional standard for ordering involuntary medication to restore a defendant's competency to proceed.  Accordingly, we choose to examine the constitutionality of § 971.14.[7]  We hold that § 971.14(4)(b) is unconstitutional to the extent it requires circuit courts to order involuntary medication based on the standard set forth in paragraph (3)(dm), which does not comport with Sell, 539 U.S. 166.

¶23  Fitzgerald argues that Wis. Stat. § 971.14 is inconsistent with the factors outlined in Sell, resulting in an unconstitutional violation of his protected liberty interest in avoiding involuntary medication.  He construes § 971.14 to "permit[] a court to commit a person accused of a crime for involuntary treatment . . . to restore competency based on his inability to understand, express or apply the advantages, disadvantages and alternatives to treatment or medication," without requiring the State to satisfy the Sell factors.

¶24  The State contends that Wis. Stat. § 971.14 is constitutional, arguing that Sell requires an involuntary

---

[7] Fitzgerald additionally argues that the circuit court incorrectly calculated his sentence credit during the hearing on the order for involuntary medication.  We do not review this issue because he pled guilty and was sentenced to time served; the issue is moot and review is unwarranted under the exceptions to dismissal for mootness.

medication <u>order</u> issued by a circuit court to meet the <u>Sell</u> standard and does not apply to a <u>statute</u> like § 971.14 governing the procedures the government must follow in order to obtain an involuntary medication order. Even if <u>Sell</u> does control the statute, the State argues that § 971.14 is constitutional because its language partially encompasses the <u>Sell</u> factors, and "the circuit courts of the State of Wisconsin have been directed to comply with the <u>Sell</u> test when issuing orders for commitment and involuntary medication" using Form CR-206 (which lists the <u>Sell</u> factors), the Judicial Benchbook, and Wis JI——Criminal SM-50 (2018).

¶25 We hold that Wis. Stat. § 971.14(4)(b) is unconstitutional to the extent it requires circuit courts to order involuntary medication based on the standard set forth in paragraph (3)(dm), which does not comport with <u>Sell</u>. Paragraph (4)(b) <u>requires</u> the circuit court to "issue an order that the defendant is not competent to refuse medication" if the State proves that the defendant is not competent to refuse treatment under the standard set forth in paragraph (3)(dm). In general terms, paragraph (3)(dm) considers a defendant not competent to refuse treatment if he is either "incapable of expressing an understanding" of the proposed medication or treatment or "substantially incapable of applying an understanding" of his mental illness "in order to make an informed choice" regarding medication or treatment. Under this statutory standard, a circuit court <u>must</u> order involuntary medication to restore trial competence regardless of whether the factors outlined in <u>Sell</u>

19

are met.[8]  The mere inability of a defendant to express an understanding of medication or make an informed choice about it is constitutionally insufficient to override a defendant's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs."  Harper, 494 U.S. at 221.

¶26 A comparison of the text of the statutory standard with the constitutional standard outlined in Sell illustrates how the statute falls short of protecting the significant liberty interest in avoiding the unwanted administration of psychotropic drugs.  Specifically, paragraph (3)(dm) does not require the circuit court to find that an important government "interest in bringing to trial an individual accused of a serious crime" is at stake, as required by the first Sell factor.  Sell, 539 U.S. at 180.  Wisconsin Stat. § 971.14 merely requires the circuit court to find probable cause that the defendant committed a crime——not necessarily a serious one.  See § 971.14(1r).  Nor does the statute require an individualized assessment of the circumstances surrounding the case, which may impact the circuit court's application of this factor.  Even for serious crimes, "[s]pecial circumstances may lessen" the

---

[8] The statute directs that the circuit court "shall" issue the order for involuntary medication if paragraph (3)(dm) is met.  Wis. Stat. § 971.14(4)(b).  "Shall" is "presumed mandatory."  State ex rel. DNR v. Wisconsin Court of Appeals, Dist. IV, 2018 WI 25, ¶13 n.7, 380 Wis. 2d 354, 909 N.W.2d 114 (quoted source omitted).

importance of the State's interest in trying the case.  Sell, 539 U.S. at 180.  For example, "[t]he defendant's failure to take drugs voluntarily . . . may mean lengthy confinement in an institution for the mentally ill——and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime."  Id.  In other words, the "facts of the individual case" determine the importance of the government's interest.  Id.  Paragraph (3)(dm) leaves no room for weighing such details.

¶27 The directive to order medication under Wis. Stat. § 971.14(3)(dm) similarly fails to include consideration of the second Sell factor:  "that administration of the drugs is substantially likely to render the defendant competent to stand trial" and "unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Sell, 539 U.S. at 181.  While the expert's report must include "the examiner's opinion regarding the likelihood that the defendant, if provided treatment, may be restored to competency within the [statutory] time period,"[9] paragraph (3)(dm) does not require the circuit court to conclude that medication is substantially likely to restore a defendant's competency or to consider whether side effects "will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense."  Sell, 539 U.S. at 181.

_____

[9] Wis. Stat. § 971.14(3)(d).

21

¶28 As to the third Sell factor, the statute falls short of the constitutional prerequisite espoused in Sell requiring the circuit court to conclude that involuntary treatment is necessary to further important government interests. This factor commands the circuit court to consider and rule out——as unlikely to achieve substantially the same results——less intrusive options for treatment as well as for administering the drugs. In contrast, Wis. Stat. § 971.14(4)(b) mandates involuntary medication if the State establishes pursuant to paragraph (3)(dm) the defendant's inability to either express an understanding of the advantages and disadvantages of medication or to make an informed choice about it, regardless of the existence of less intrusive but nonetheless effective options.

¶29 The fourth Sell factor requires the circuit court to conclude that medication is "medically appropriate" meaning "in the patient's best medical interest in light of his medical condition." Sell, 539 U.S. at 181. In contrast, Wis. Stat. § 971.14(4)(b) imposes an obligation on "whoever administers the medication or treatment to the defendant" to "observe appropriate medical standards." § 971.14(4)(b) (emphasis added). The State argues "appropriate medical standards" might encompass a consideration of the defendant's best medical interest but paragraph (4)(b) addresses the administration of medication or treatment, not whether such treatment should be ordered in the first place. Nothing in the statute empowers the person administering the drugs to override the circuit court's order that the drugs be administered. Sell requires the circuit

22

court to conclude that the administration of medication is medically appropriate, not merely that the medical personnel administering the drugs observe appropriate medical standards in the dispensation thereof.

¶30 The State's reliance on extrinsic materials to support the constitutionality of Wis. Stat. § 971.14(3)(dm) and (4)(b) is unavailing. Although circuit courts must use Form CR-206,[10] which lists the Sell factors,[11] and the circuit court used that form to order the involuntary medication of Fitzgerald in this case, a judicially-created form cannot save a constitutionally infirm statute. While Form CR-206 directs the circuit court to make findings consistent with Sell, the statute requires the circuit court to order treatment if the statutory standard is met, regardless of whether the Sell findings are made. Likewise, the Special Materials to the jury instructions and the Judicial Benchbook cited by the State cannot alter or supplement

---

[10] Wisconsin Stat. § 971.025(1) ("In all criminal actions . . . the parties and court officials shall use the standard court forms adopted by the judicial conference.").

[11] Form CR-206 lists the Sell factors, but does not identify their source. See Sell v. United States, 539 U.S. 166 (2003). Additionally, the form does not address the gaps between the standard in Wis. Stat. § 971.14(3)(dm) and (4)(b) and the constitutional principles set forth in Sell. The judicial conference may wish to consider modifying this form to clarify that circuit courts must follow Sell regardless of whether the standard in § 971.14(3)(dm) and (4)(b) has been met. See Wis. Stat. § 758.18(1) ("The judicial conference shall adopt standard court forms for use by parties and court officials in all civil and criminal actions and proceedings in the circuit court[.]").

23

the statutory text enacted by the legislature, which binds the circuit courts. See Hefty v. Strickhouser, 2008 WI 96, ¶33 n.11, 312 Wis. 2d 530, 752 N.W.2d 820 (explaining that the Judicial Benchbook "is not intended to stand as independent legal authority for any proposition of law" and is merely "an informed and insightful discussion of practice"); State v. Gilbert, 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983) (explaining that special materials are "persuasive" authority). We do not read words into a statute regardless of how persuasive the source may be; rather, we interpret the words the legislature actually enacted into law. "Under the omitted-case canon of statutory interpretation, '[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered.'" Lopez-Quintero v. Dittman, 2019 WI 58, ¶18, ___ Wis. 2d ___, ___ N.W.2d ___ (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012)). "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." Fond Du Lac Cty. v. Town of Rosendale, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989).

¶31 Application of the statutory mandate requires an order for involuntary medication based solely on the defendant's inability to express an understanding of treatment or make an informed choice of whether to accept or refuse it, resulting in the unconstitutional deprivation of the defendant's significant liberty interest in avoiding the unwanted administration of

24

medication. The fortuity of circuit courts sometimes following Sell as a result of using Form CR-206, the special materials to the jury instructions, and the Benchbook despite Wis. Stat. § 971.14's contrary directive may ensure that certain court orders comport with the Constitution but cannot render the statute itself constitutional.

¶32 To the extent Wis. Stat. § 971.14(3)(dm) and (4)(b) require circuit courts to order involuntary medication when the Sell factors have not been met, the statute unconstitutionally infringes the individual liberty interest in avoiding the unwanted administration of anti-psychotropic drugs. Our holding does not preclude circuit courts from ordering involuntary medication for purposes of restoring a criminal defendant's competency provided the circuit courts apply the standard set forth in Sell.

¶33 Applying this holding to the present case, the State conceded at oral argument that the circuit court did not consider the side effects of the proposed medication or whether those side effects would interfere significantly with Fitzgerald's ability to assist in his defense.[12] After reviewing the circuit court's decision, we agree with the State. The circuit court never found, as it must, "that administration of the drugs is substantially likely to render the defendant

---

[12] The box the circuit court checked on Form CR-206 listed the Sell factors, including the second factor, but the court never addressed the side effects on the record.

competent to stand trial" and "unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." See Sell, 539 U.S. at 181. We therefore vacate the circuit court's order for involuntary medication.

## 4. Supervisory Writ

¶34 In his petition for a supervisory writ, Fitzgerald argues this court should exercise its superintending authority and hold that the stay established in Scott begins automatically upon entry of the order for involuntary medication. The State opposes his request, arguing that "Fitzgerald did not establish the requisite elements for a supervisory writ" and requests that we "decline to exercise [our] superintending authority" to grant relief to Fitzgerald. The court is equally divided on the issue of when the automatic stay established in Scott begins. Therefore, we affirm the decision of the court of appeals denying Fitzgerald's petition for a supervisory writ. See State v. Garcia, 2019 WI 40, ¶1, 386 Wis. 2d 386, 925 N.W.2d 528 (per curiam) (affirming the court of appeals decision because the court was equally divided); see also, Gruhl Sash & Door Co. v. Chicago, M. & St. P. Ry. Co., 173 Wis. 215, 215, 180 N.W. 845 (1921) (explaining that where the supreme court is equally divided, the "established rule" is to affirm the court of appeals decision).

## III. CONCLUSION

26

¶35 Circuit courts may order involuntary medication to restore a defendant's competency to proceed in a criminal case, provided the four factors the United States Supreme Court established in Sell are met. To the extent Wis. Stat. § 971.14(3)(dm) and (4)(b) require circuit courts to order involuntary medication when the Sell standard has not been met, the statute is unconstitutional. Because the circuit court did not apply the Sell factors, we vacate the circuit court's order.

¶36 Because the court is equally divided on Fitzgerald's petition to review the court of appeals decision denying his request for a supervisory writ, we affirm the decision of the court of appeals.

*By the Court.*——The order of the circuit court is vacated; the decision of the court of appeals is affirmed by an equally divided court.

¶37 SHIRLEY ABRAHAMSON, J., withdrew from participation before oral argument.

27

¶38 PATIENCE DRAKE ROGGENSACK, C.J. (concurring). The issue presented by this review is whether the circuit court unconstitutionally ordered Raytrell K. Fitzgerald to be involuntarily medicated because his mental condition prevented him from being competent to stand trial. The majority opinion focuses its attention on Wis. Stat. § 971.14(3)(dm) and opines that paragraph (3)(dm) is unconstitutional unless a gloss from Sell v. United States, 539 U.S. 166 (2003) is applied to the statute.[1]

¶39 I agree that generally the Sell factors must enter into the circuit court's consideration of whether to order involuntary medication so as to render an incompetent defendant competent to stand trial. However, there are occasions when a defendant who is not competent to stand trial also will be dangerous to himself or to others. In those occasions, the Sell factors will not be relevant. As the United States Supreme Court has explained:

> A court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a different purpose, such as . . . the individual's dangerousness.

Id. at 181-82 (citing Washington v. Harper, 494 U.S. 210, 225-26 (1990)). Furthermore, determining whether medication is necessary to control dangerous behavior is often an easier task for a medical expert than it is for the expert to balance the

---

[1] Majority op., ¶2.

1

harms and benefits related to opining on legal competence. Id. at 182.

¶40 Wisconsin Stat. § 971.14 addresses competency proceedings. Paragraph (1r) instructs that "[t]he court shall proceed under this section whenever there is reason to doubt a defendant's competency to proceed." The statute permits the court to order an examination of the defendant "for competency purposes at any stage of the competency proceedings by physicians or other experts." § 971.14(2)(g)

¶41 The record reveals that Fitzgerald was removed from outpatient treatment because of incidents of violent conduct in relation to others. This was not the focus of the circuit court. However, a statutory provision in addition to the forced medication found in Wis. Stat. § 971.14(3)(dm) on which the majority opinion focuses, is found in paragraph (2)(f).

¶42 Wisconsin Stat. § 971.14(2)(f) provides that a defendant who is charged with a crime, is incompetent and also is dangerous to himself or others is not affected by § 971.14(3)(dm). Instead, paragraph (2)(f) provides a different test for refusing medication. It provides that a defendant "may refuse medication and treatment except in a situation where the medication or treatment is necessary to prevent physical harm to the defendant or others." § 971.14(2)(f). Therefore, if medication is ordered under paragraph (2)(f), as the United States Supreme Court has explained, the Sell factors do not apply. Sell, 539 U.S. at 182.

2

¶43 While I join the majority opinion's concern for adding a <u>Sell</u> gloss to our interpretation of Wis. Stat. § 971.14(3)(dm) in order to preserve its constitutionality, I write to point out that if a defendant is dangerous to himself or others, ordering treatment for that condition, which will likely return the defendant to competency, does not employ the <u>Sell</u> factors. Because I am concerned that paragraph (2)(f) could be overlooked, I write in concurrence to point up its use when appropriate.

¶44 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.