**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 18, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP160-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2012CF2207

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

ERIC P. ENGEN,

    DEFENDANT-APPELLANT.

       APPEAL from orders of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Reversed and cause remanded with directions*.

       Before Fitzpatrick, P.J., Kloppenburg, and Graham, JJ.

¶1    GRAHAM, J. Eric P. Engen appeals from a circuit court order, issued pursuant to WIS. STAT. § 971.14 (2019-20),[1] authorizing the involuntary administration of medication to treat Engen to competency to participate in probation revocation proceedings.  On appeal, Engen argues that the State failed to introduce evidence sufficient to satisfy the constitutional requirements for such orders set forth in *Sell v. United States*, 539 U.S. 166 (2003).  Engen also appeals a circuit court order tolling the statutory time limits to treat him to competency pending this appeal, and he advances several other arguments, many of which were recently addressed by this court in *State v. Green*, No. 2020AP298-CR, slip op. recommended for publication (WI App February 25, 2021).

¶2    Based in part on a concession by the State and bolstered by our analysis in *Green*, we conclude that the State did not make the required showings under *Sell*, and that the involuntary medication order was entered in error.  We further conclude that, as we decided in *Green*, the circuit court lacked the authority to toll the time limits for treating Engen to competency.  Accordingly, we reverse the involuntary medication and tolling orders, and we remand to the circuit court with directions to discharge Engen from his commitment to the Wisconsin Department of Health Services (DHS).

**BACKGROUND**

¶3    In 2013, Engen was convicted of two counts of felony stalking and two misdemeanor counts of violating a harassment restraining order.  The circuit

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

court sentenced him to a bifurcated sentence of incarceration and extended supervision, followed by a five-year period of probation.

¶4      After Engen allegedly committed unspecified violations of the terms of his probation in February 2019, he was placed on a probation hold and faced revocation proceedings. The administrative law judge questioned whether Engen was competent to proceed, and the circuit court ordered a competency evaluation.

**The Competency Hearing**

¶5      Dr. Nancy Elliott examined Engen and submitted a report, which opined that Engen was not competent due to "very persistent and fixed delusional beliefs." Dr. Elliott noted that she was unable to access Engen's medical records and the records of a prior civil commitment during which he received medications. Based on the available information, she was "unable to offer an opinion on the likelihood of restoration to any reasonable degree of psychological certainty." At the hearing, Dr. Elliot testified that she did not know for sure whether Engen had previously been hospitalized, treated, or medicated, and she reiterated that she had no opinion about whether medication would restore Engen's competency.

¶6      The circuit court found that Engen was not competent to proceed with the revocation proceedings. On September 30, 2019, the court entered an order for Engen's commitment for treatment to competency pursuant to WIS. STAT. § 971.14(5).

¶7      At the time of the competency hearing, it was undisputed that the evidence was insufficient to authorize the involuntary administration of medication under *Sell*, 539 U.S. 166. In *Sell*, the Supreme Court identified four factors that the State must satisfy to obtain an order authorizing the involuntary

administration of medication to treat a defendant to competency to stand trial. We refer to these four factors as the "*Sell* factors" throughout this opinion, and we discuss them at length below.[2] Although the circuit court acknowledged that the State had not satisfied the *Sell* factors at the time of Engen's competency hearing, the court stated that, to the extent the DHS doctors later determined that medication was "the only appropriate way to proceed," the State could request an involuntary medication order at that time.

¶8    Engen received treatment at the Wisconsin Resource Center. Approximately two months after he was committed, Dr. John Pankiewicz submitted a report, which concluded that Engen had not regained competency. Dr. Pankiewicz opined that Engen suffered from delusional ideation, and that medication was necessary to restore him to competency. Relying on Dr. Pankiewicz's report, the State requested an order authorizing the involuntary administration of medication under WIS. STAT. § 971.14(5)(am).[3] The State noted that its doctors had still not been able to access Engen's mental health treatment records, and the court entered an order compelling the production of these records.

---

[2] In *State v. Fitzgerald*, our supreme court held that the requirements of WIS. STAT. § 971.14 did not satisfy the constitutional requirements set forth in *Sell*, and that "circuit courts may order involuntary medication to restore trial competency under § 971.14 only when the order complies with the *Sell* standard." *State v. Fitzgerald*, 2019 WI 69, ¶¶2, 26-29, 387 Wis. 2d 384, 929 N.W.2d 165 (referencing *Sell v. U.S.*, 539 U.S. 166 (2003)).

[3] As noted in *Fitzgerald*, a different test applies to the question of whether a person in Engen's situation may be forced to take medication under WIS. STAT. § 971.14(2)(f) "to prevent physical harm to the defendant or others." *See Fitzgerald*, 387 Wis. 2d 384, ¶18 (majority op.); *id.*, ¶42 (Roggensack, C.J., concurring). The State did not proceed under § 971.14(2)(f) in this case, and we address that statute no further.

## The Involuntary Medication Hearing

¶9 The circuit court held an involuntary medication hearing on January 16, 2020. At the outset, Engen interrupted the proceeding by vocally complaining about his counsel. In response to the court's admonition that he would be removed from the courtroom if he decided to "speak up again," Engen directed a series of obscenities and threats at the court. Engen was removed, and the court considered his appearance waived.

¶10 The circuit court received Dr. Pankiewicz's report into evidence and invited Engen's counsel to cross-examine him. Engen's counsel argued that the report was insufficient to satisfy the *Sell* factors, and that counsel was unable to cross-examine Dr. Pankiewicz about his medical conclusions because counsel had not received Engen's medical records. As counsel explained, Engen had refused to sign a release to give him access to his medical records, and counsel had "no information about Engen's medical condition." The court responded: "I understand and empathize with your situation, but it is of your client's doing that you do not have access to his records[.]" The court denied counsel's request for records, alluding to a potential HIPAA[4] violation if it were to authorize the release of medical records that Engen did not want to be released.[5]

---

[4] "HIPAA" is the acronym for the Health Insurance Portability and Accountability Act of 1996. *See* Pub. L. No. 104-191, 110 Stat. 1936; 42 U.S.C. § 1320d-6.

[5] On appeal, Engen challenges this determination and argues that counsel was entitled to his records to prepare for the Chapter 971 proceedings, even without Engen's consent, pursuant to WIS. STAT. § 51.30(4)(b)11. and 45 C.F.R. § 164.512(e)(l)(i) (2019). The State agrees that Engen's counsel should have been provided access to his medical records. Because the parties agree and our further discussion of this issue would not change the result of this appeal, we address this issue no further. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508.

¶11     The circuit court proceeded with the hearing. Dr. Pankiewicz testified that he had only been able to review records from Engen's most recent admission and Dr. Elliott's competency assessment. In Dr. Pankiewicz's opinion, Engen's "most likely specific diagnosis would be a delusional disorder." Dr. Pankiewicz testified that he did not have a specific medication in mind for Engen, that he did not know whether Engen would experience any side effects from medication, and that he did not have any information about how Engen responded to medication in the past. According to Dr. Pankiewicz, the DHS psychiatrists would try one medication and, if Engen experienced adverse side effects, they would try another until they found a medication that was effective and did not have adverse side effects.[6]

¶12     The circuit court determined that it would authorize the involuntary administration of medication for the following reasons:

> I do find that all of the factors have been satisfied. I'm utilizing not only the evidence presented today, but also the fact that I sat through a trial of this case and am very familiar with the danger Mr. Engen posed to his victim. Then, of course, we have his conduct today which is rather self-evident.
>
> So I'm going to make the findings indicated on the order of commitment for treatment, involuntary administration of medication ….

In its written order, the court checked a box indicating that the *Sell* factors had been satisfied.

---

[6] The State also presented the testimony of a detective, who testified about an email she received from an individual who indicated that she was Engen's sister and that Engen had benefitted from medication in the past.

6

¶13 Engen promptly appealed the involuntary medication order, and he also filed a motion alerting the circuit court that he was entitled to an automatic stay of the order pending the appeal.[7] The State responded with a motion asking the court to toll the statutory time limits for restoring Engen to competency for the duration of the appeal. The State pointed to WIS. STAT. § 971.14(5)(a)1., which gives the State no more than twelve months to treat a defendant to competency.[8] As the State explained, Engen had already been committed for four months, and so only eight months remained to treat Engen to competency. The State noted that, pursuant to WIS. STAT. § 971.14(6)(b), it would be "empowered" to file a Chapter 51 petition at the expiration of the statutory period.[9] It nevertheless argued that, if Engen insisted on appealing and the involuntary medication order was stayed during that time, the twelve-month time limits should be tolled for the duration of the appeal.

¶14 During the hearing on these motions, the circuit court indicated that it would lift the automatic stay. It further indicated that, if the stay was reinstated by another court, it would toll the statutory time limits for treating Engen to competency for the duration of the appeal. We present additional details about these motions and the circuit court's order on these motions below.

---

[7] *See* ***State v. Scott***, 2018 WI 74, ¶43, 382 Wis. 2d 476, 914 N.W.2d 141 (providing that "involuntary medication orders are subject to an automatic stay pending appeal").

[8] *See* WIS. STAT. § 971.14(5)(a)1. (providing that a defendant may be committed to the DHS's custody for treatment to competency "for a period not to exceed 12 months, or the maximum sentence specified for the most serious offense … charged, whichever is less").

[9] *See* WIS. STAT. § 971.14(6)(b) (providing that when a circuit court discharges a defendant from a § 971.14(5)(b) involuntary commitment, it may order that the defendant be taken immediately back into custody and promptly delivered to a facility pursuant to WIS. STAT. ch. 51).

¶15    Engen amended his notice of appeal to include the circuit court's order lifting the stay and granting the State's motion to toll. Engen also asked us to reinstate the automatic stay pending Engen's appeal of the circuit court's involuntary medication order, and we granted that motion.

## DISCUSSION

¶16    Engen's primary argument on appeal is that the evidence offered by the State did not satisfy the *Sell* factors, and that the involuntary medication order violated Engen's due process rights. Engen also raises two additional arguments about the involuntary medication order, both of which were recently resolved by this court in *Green*, No. 2020AP298-CR: whether the circuit court had the authority to decide a motion to lift the automatic stay (it did, *id.*, ¶¶64-75); and whether the court had the authority to toll the time limits in Wis. Stat. § 971.14(5)(a)1. for treating Engen to competency (it did not, *id.*, ¶¶52-63).

¶17    We begin by addressing the constitutional requirements for an order authorizing the involuntary administration of medication to treat a defendant to competency to participate in criminal proceedings. For reasons we explain below, we conclude that the State did not meet its burden under *Sell*, 539 U.S. 166, and, therefore, the involuntary medication order was entered in error. After reaching this conclusion, we address the circuit court order tolling the twelve-month treatment period for the duration of this appeal.

## I. The Involuntary Medication Order

¶18    In *Sell*, 539 U.S. 166, the Supreme Court held that the United States Constitution permits the government to involuntarily administer antipsychotic medication "to a mentally ill defendant facing serious criminal charges in order to

8

render that defendant competent to stand trial," but only if "the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.* at 179. In other words, a court has to consider whether, "in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of … treatment," the State has shown a need for that treatment "sufficiently important to overcome the individual's protected interest in refusing" medication. *Id.* at 183. The Court acknowledged that the involuntary administration of such medication "solely for trial competence purposes ... may be rare," *id.* at 180, and it established a four-factor test to determine whether such administration is constitutionally appropriate.

¶19     Our supreme court recently elaborated on these four factors in *State v. Fitzgerald*:

> "First, a court must find that important governmental interests are at stake." "[B]ringing to trial an individual accused of a serious crime" against a person or property is an important interest. The Court did, however, emphasize that prior to entering an order for involuntary medication, courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution."

> "Second, the court must conclude that involuntary medication will significantly further" the government's interest in prosecuting the offense. This means that a court "must find that administration of the drugs is substantially likely to render the defendant competent to stand trial" and "unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair."

> "Third, the court must conclude that involuntary medication is necessary to further those interests." In other words, "[t]he court must find that any alternative, less

intrusive treatments are unlikely to achieve substantially the same results." In order to make this finding, the deciding court "must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods." In other words, the *Sell* Court considered an order directed at the defendant, requiring him [or her] to accept medication or be found in contempt of court, to be less intrusive than ordering an entity like DHS to forcibly administer medication to the defendant.

"Fourth, … the court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." The *Sell* Court explained that "[t]he specific kinds of drugs at issue may matter here as elsewhere" because "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success."

*State v. Fitzgerald*, 2019 WI 69, ¶¶14-17, 387 Wis. 2d 384, 929 N.W.2d 165 (alterations in original; citations omitted); *see also* **Green**, No. 2020AP298, ¶15. The State has the burden to "prove the factual components of each of the four factors by clear and convincing evidence," and "[i]f any factor is unsatisfied, involuntary medication is a violation of the Due Process Clause and is unconstitutional." **Green**, No. 2020AP298, ¶16.[10]

¶20     Here, the parties dispute whether the first factor is met. The first factor requires a two-step inquiry: the court must determine whether Engen's crime is sufficiently serious to establish an important government interest, and if

---

[10] Like the parties in **Green**, the parties in this case dispute whether we should apply a "clearly erroneous" or "de novo" standard of review to the circuit court's determinations on these factors. In **Green**, we summarized the parties' dispute and then declined to resolve it because we would have reached the same conclusion under either standard. *State v. Green*, No. 2020AP298-CR, ¶¶18-20, slip op. recommended for publication (WI App February 25, 2021). So too here. As we discuss below, it is undisputed that several of the *Sell* factors are not satisfied by the evidence in this case, and we would reach the same conclusion under either standard of review.

so, the court must consider any special circumstances that mitigate that interest. *Sell*, 539 U.S. at 180.

¶21    The parties raise interesting arguments about the importance of the governmental interest under the circumstances here,[11] but we need not resolve this issue in this case.  "An appellate court need not address every issue raised by the parties when one issue is dispositive."  *Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508.  Here, we need not decide whether the State satisfied the first *Sell* factor because the State has conceded that it failed to satisfy the second, third, and fourth *Sell* factors, and we agree with the State's concession.

¶22    Specifically, the State acknowledges that it could not satisfy the second, third, and fourth *Sell* factors without providing an individualized treatment plan.  It acknowledges that an individualized plan is required to "guide[] the court's decisions about whether involuntary medication will further the State's interest, is necessary to achieve those interests, and is medically appropriate."

¶23    The State's concession is particularly well founded in light of our recent decision in *Green*, No. 2020AP298.  In that case, the State offered a treatment plan for Green.  However, the plan was generic and failed to consider or account for Green's individual circumstances, such as his likely response to the

---

[11] The State argues that Engen had previously been convicted of stalking, "a crime of violence," and that his "ugly, vehement, and inappropriate outbursts in court" raise legitimate concerns about the dangers of allowing him to remain in the community for the remainder of his sentence instead of going through a revocation proceeding.  Engen counters by arguing that there is no evidence in the record of the severity of his alleged probation violation, that he had already been confined "for a significant period of time" following his 2013 convictions, and that the State's interest in prosecuting him "has largely been achieved."

medication specified in the plan, the likelihood that it would render him competent, and the likelihood of side effects that might impair his ability to participate in his defense. *Id.*, ¶¶37-38. As we explained, "[i]t is not enough for the State to simply offer a generic treatment plan with a medication and dosage that are generally effective for a defendant's condition. Rather, the circuit court must consider the defendant's particular circumstances and medical history to assess the underlying factual questions" that *Sell* requires the court to address. *Id.*, ¶34.[12]

¶24 Here, the State offered no treatment plan whatsoever, not even the generic variety of treatment plan that we found lacking in *Green*. Dr. Pankiewicz diagnosed Engen with a general psychotic disorder, "most likely … a delusional disorder," and he indicated that Engen should be medicated. However, he did not identify any medication or medications that could help Engen regain competency to stand trial, nor did he discuss their efficacy rates for Engen's alleged illness, their likely effects on his ability to understand court proceedings and assist his lawyer, or their likely effects on Engen's health. In fact, even though Dr. Elliott diagnosed Engen with a similar psychotic disorder, she testified that such disorders are not always treatable with psychiatric medications.

¶25 Under these circumstances, the circuit court could not have determined by clear and convincing evidence that an involuntary medication order was necessary to significantly further any of its alleged governmental interests,

---

[12] We noted that such a holding is supported by several federal circuits, which have already decided that courts must consider the individualized treatment plan as applied to a particular defendant. *See, e.g., United States v. Evans*, 404 F.3d 227, 242 (4th Cir. 2005); *United States v. Watson*, 793 F.3d 416, 424 (4th Cir. 2015); *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1137 (9th Cir. 2005).

that less intrusive treatments are unlikely to achieve substantially the same results, or that the proposed treatment was medically appropriate. We recognize that Dr. Pankiewicz and Dr. Elliott did not have full access to a complete set of Engen's medical and treatment records, which most likely inhibited their ability to render an individualized treatment plan. However, a lack of access to medical and treatment records does not excuse the State from meeting its burden to satisfy the *Sell* factors. Therefore, we conclude that the circuit court entered the involuntary medication order in error.

## II. The Tolling Order

¶26 We now briefly address the circuit court order purporting to toll the time limits in WIS. STAT. § 971.14(5)(a)1. for the duration of the appeal.

¶27 As mentioned above, at the time that Engen filed this appeal, the State conceded that he had a right to an automatic stay of the circuit court's order based on our supreme court's recent decision in *State v. Scott*, 2018 WI 74, ¶43, 382 Wis. 2d 476, 914 N.W.2d 141. However, the State argued that, if the stay remained in place, the time it would take to resolve the appeal would all but ensure that the State would have no practical opportunity to administer involuntary medication for purposes of treating Engen to competency. The State pointed to WIS. STAT. § 971.14(5)(a)1., which provides the State no more than twelve months to treat a defendant to competency. To the extent that the involuntary medication order was stayed during the appeal, the State asked the circuit court to toll the twelve-month statutory time limit to restore his competence to participate in the probation revocation proceedings.

¶28 After hearing both parties' arguments, the circuit court granted the State's motion to toll, reasoning that "[t]he whole point of commitment is to get

proper treatment," and that, if "proper treatment is withheld based on legal machinations used to delay and use up the commitment period, it makes no sense for the time of commitment period to continue running." The court entered a written order memorializing this decision on January 21, 2020.[13]

¶29   As stated above, we considered this issue in *Green*, and we determined that there is no statutory authority to toll the statutory period to bring a defendant to competency under WIS. STAT. § 971.14(5)(a)1. *Green*, No. 2020AP298, ¶¶52-63. Therefore, as is now apparent, the circuit court's tolling order was entered in error. Because it has now been more than twelve months since the court committed Engen pursuant to § 971.14(5), there is no longer any authority for the court to commit and treat Engen under § 971.14(5), and on remand, the court must discharge Engen from his commitment. We note that, as in *Green*, our decision would not preclude the State from pursuing other dispositions, including commitment under Chapter 51, provided that the State can satisfy the commitment criteria under the applicable statutes.

---

[13] In the same order, the circuit court also granted the State's motion to lift the automatic stay. On appeal, Engen contends that such motions must be filed in the first instance in the court of appeals. As noted above, we addressed and rejected this same argument in *Green*, No. 2020AP298, ¶¶64-75. Therefore, we address this issue no further, except to briefly comment that the manner in which the circuit court addressed the State's motion all but invited a due process challenge. Here, during the course of the hearing, the circuit court invited the State to make an oral motion to lift the stay. The court then decided that motion within minutes, despite an objection by Engen's counsel that he had no notice of the State's arguments and no opportunity to prepare a defense. We address this issue no further because any violation was cured by this court's subsequent entry of an order reinstating the stay.

## CONCLUSION

¶30 For all the above reasons, we conclude that the involuntary medication order and tolling orders were entered in error. Therefore, we reverse and remand for the circuit court to discharge Engen from his commitment.

*By the Court.*—Orders reversed and cause remanded with directions.

Not recommended for publication in the official reports.