**2025 WI 23**

# Supreme Court of Wisconsin



JOSH KAUL, et al.,
*Plantiffs-Respondents-Petitioners,*

*v.*

WISCONSIN STATE LEGISLATURE, et al.,
*Defendants-Appellants.*

No. 2022AP790
Decided June 17, 2025

REVIEW of a decision of the Court of Appeals.
Dane County Circuit Court (Susan M. Crawford, J.) No. 2021CV1314

HAGEDORN, J., delivered the majority opinion for a unanimous Court.

¶1    BRIAN HAGEDORN, J. This is a constitutional challenge to a law that prohibits the Department of Justice (DOJ) from settling most civil cases unless and until it receives the approval of the Joint Finance Committee (JFC). In *Service Employees International Union, Local 1 v. Vos*, we rejected a facial challenge to this provision—that is, a showing that the statute is unconstitutional in all of its applications. 2020 WI 67, ¶10, 393 Wis. 2d 38, 946 N.W.2d 35 [hereafter *SEIU*]. We recognized there that litigation on behalf of the state is an executive power, but we concluded that in at least some instances, the Legislature may have a constitutional institutional interest such that the legislative approval requirement would meet constitutional muster.

¶2      In this case, the Attorney General, DOJ, and the Governor bring a narrower challenge to two specific categories of cases: civil enforcement actions and cases DOJ brings at the request of executive-branch agencies for programs those agencies are statutorily charged with administering. DOJ argues that litigation in these two categories of cases constitutes core executive power, and as such, the Legislature cannot interfere. The Legislature contends it should have the final say in approving settlements in at least some cases within these categories due to its constitutional interests in the power of the purse and in setting policy for the state.

¶3      As this court has explained over a series of cases, the Legislature's constitutional responsibilities consist in making the law. Enforcing the law is a task vested in the executive branch. The general principle we announced in *SEIU* remains. While the Legislature can by law empower DOJ to represent the state in litigation and prescribe the limits and ends of that power, it generally cannot give itself the power to control litigation the statutes empower DOJ to undertake. Unlike in *SEIU*, the Legislature has not identified any constitutional role for itself in these two categories of cases. We hold that settling these two categories of cases is within the core powers of the executive branch, and the statutory requirement to obtain JFC's approval prior to settling these cases violates the Wisconsin Constitution's separation of powers. We reverse the decision of the court of appeals holding otherwise.

## I. BACKGROUND

¶4      The Department of Justice represents the state of Wisconsin in legal matters. It is responsible for prosecuting or defending all criminal and civil cases where the state, a state agency, or a state employee is involved, or where the state or the people of Wisconsin may have an interest. WIS. STAT. § 165.25(1), (1m) (2023–24).[1] This includes civil actions DOJ prosecutes to enforce state laws and those DOJ pursues at the direction of an executive agency regarding programs it administers. DOJ possesses this power by statute, having no inherent authority to prosecute cases on its own. *See State v. City of Oak Creek*, 2000 WI 9, ¶¶24, 55, 232 Wis. 2d 612, 605 N.W.2d 526.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2023–24 version unless otherwise indicated.

¶5     Until 2017, DOJ could settle any civil suit it pursued without legislative approval.[2] WIS. STAT. § 165.08 (2015–16). But in 2018, after a new Governor and Attorney General were elected, but before they assumed office, the Legislature amended the statute governing DOJ's ability to settle cases in 2017 Wis. Act 369, § 26, which now provides:

> Any civil action prosecuted by the department by direction of any officer, department, board, or commission, or any civil action prosecuted by the department on the initiative of the attorney general, or at the request of any individual may be compromised or discontinued with the approval of an intervenor under s. 803.09(2m) or, if there is no intervenor, by submission of a proposed plan to the joint committee on finance for the approval of the committee. The compromise or discontinuance may occur only if the joint committee on finance approves the proposed plan.

WIS. STAT. § 165.08(1). Thus, DOJ can no longer settle civil cases unless and until a legislative committee approves DOJ's settlement plan.

¶6     Shortly after the statute was amended, labor unions and individual taxpayers argued the statute was facially unconstitutional. *See SEIU*, 393 Wis. 2d 38, ¶3. In that case, we held that this provision was not unconstitutional in all its applications. *Id.*, ¶¶63, 72. We left open, however, the possibility that individual applications of the law or categories of applications might violate the constitution. And that is the kind of challenge we have here.

¶7     About a year after *SEIU*, Attorney General Josh Kaul, DOJ, Governor Evers, and the Secretary of the Department of Administration filed this case in Dane County Circuit Court (for ease, we will refer to the plaintiffs collectively as "DOJ").[3] Having lost the facial challenge in *SEIU*,

---

[2] If DOJ pursued a civil action on the behalf of an officer, department, board, or commission, it could settle it at the direction of such officer, department, board, or commission. WIS. STAT. § 165.08 (2015–16). If DOJ brought an action at the Attorney General's direction, or on behalf of an individual, it could settle after receiving the Governor's approval. *Id.*

[3] Kathy Kotlin Blumenfeld succeeded Joel Brennan as the Secretary-Designee of the Department of Administration after the case was filed in circuit

DOJ argued that the settlement statute was unconstitutional as to two categories of civil cases. Specifically, DOJ challenged the statute's constitutionality as applied to civil enforcement actions and actions state agencies request DOJ to pursue. Settlement of these cases, DOJ argued, constitutes core executive power into which the legislative branch cannot interfere.

¶8     The circuit court agreed with DOJ and granted its motions for summary judgment as to both categories. The court of appeals reversed. It concluded that the power to settle these types of cases is a shared power and legislative sign off on settlements was not an undue burden on executive powers. *Kaul v. Wis. State Legislature*, 2025 WI App 3, ¶¶36, 43, 414 Wis. 2d 686, 17 N.W.3d 281. DOJ then petitioned this court for review, which we granted.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

¶9     Procedurally, this case comes as a review of the circuit court's order granting summary judgment. This is a question of law that calls for our independent judgment. *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶13, 408 Wis. 2d 39, 992 N.W.2d 31. Summary judgment is appropriate if the pleadings and supporting filings show that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation omitted); WIS. STAT. § 802.08(2).

### B.  THE SEPARATION OF POWERS

¶10     The Wisconsin Constitution divides government into three separate branches, each vested with a specific power. WIS. CONST. ART. IV, § 1; ART. V, § 1; ART. VII, § 2. The Legislature is vested with the legislative power, which is "the power to make the law, to decide what the law shall be." *SEIU*, 393 Wis. 2d 38, ¶1. The executive branch is vested with the power to "execute or enforce the law as enacted." *Id*. And the judiciary is

---

court. She is therefore the third plaintiff-respondent-petitioner named before us. *See Kaul v. Wis. State Legislature*, No. 2022AP790, order, at 2 n.2 (WI App Aug. 17, 2022).

vested with the power "to interpret and apply the law to disputes between parties." *Id.*

¶11    Where the constitution has conferred power on a single branch, that is considered a core constitutional power of that branch. *Id.*, ¶35. If a core power is at issue, "no other branch may take it up and use it as its own." *Id.* (internal quotation omitted). As we have consistently reiterated, when core powers are involved, "*any* exercise of authority by another branch of government is unconstitutional." *In re Complaint Against Grady*, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984); *Evers v. Marklein*, 2024 WI 31, ¶10, 412 Wis. 2d 525, 8 N.W.3d 395.

¶12    Yet this court has recognized instances in which a power is shared between two branches. *State v. Holmes*, 106 Wis. 2d 31, 42–43, 315 N.W.2d 703 (1982). "Shared powers are those that lie at the intersections of these exclusive core constitutional powers." *SEIU*, 393 Wis. 2d 38, ¶35 (internal quotation omitted). The court has found shared areas of power when the subject at issue is either "constitutionally granted" to both branches vying to exercise it or "not exclusively committed" to any branch. *State v. Horn*, 226 Wis. 2d 637, 645, 594 N.W.2d 772 (1999); *State v. Unnamed Defendant*, 150 Wis. 2d 352, 360; 441 N.W.2d 696 (1989) (citing *Rules of Court Case*, 204 Wis. 501, 514, 236 N.W. 717 (1931)). That is, we have found shared powers when two or more branches, in the exercise of their constitutionally assigned role, have the authority to act upon a certain subject matter. *See Horn*, 226 Wis. 2d at 644–45. Typically, this inquiry involves looking at the text of the constitution and, if relevant, a consideration of "the practices and laws in existence before, at the time of, and after the adoption of the state constitution." *State ex rel. Friedrich v. Cir. Ct. for Dane Cnty.*, 192 Wis. 2d 1, 20, 531 N.W.2d 32 (1995).

¶13    By way of illustration, we have found criminal sentencing to be a shared power between the three branches because each branch has a constitutional part to play in the subject: "It is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the court to impose the penalty; while it is the function of the executive to grant parols and pardons." *Drewniak v. State ex rel. Jacquest*, 239 Wis. 475, 488, 1 N.W.2d 899 (1942); *see also State v. Borrell*, 167 Wis. 2d 749, 767, 482 N.W.2d 883 (1992) (citing *Drewniak*, 239 Wis. At 488) ("It is well established that Wisconsin's system of sentencing is an area of shared responsibility among the separate branches of government[.]"). Similarly, we have found a shared power between the legislative and judicial branches in court automation appropriations because the judiciary has a

constitutional power "over the administration and functioning of the courts" and the Legislature has constitutional authority over appropriations. *Flynn v. Dep't of Admin.*, 216 Wis. 2d 521, 552, 576 N.W.2d 245 (1998).

¶14    The nature of the powers being exercised—core or shared— informs our separation of powers analysis. If a branch attempts to usurp the core powers of another branch, it is per se unconstitutional. *See SEIU*, 393 Wis. 2d 38, ¶35. When powers are shared between different branches, however, it still may violate the constitution if the exercise of power unduly burdens or substantially interferes with another branch's exercise of its constitutional powers. *Horn*, 226 Wis. 2d at 645.

## C.  LITIGATION AND EXECUTIVE POWER

¶15    In this case, DOJ argues that the power to settle two categories of civil cases—civil enforcement actions and civil cases brought on behalf of executive agencies—constitutes core executive power. This type of categorical challenge contains aspects of an as-applied and facial challenge; it is what we have called a "hybrid" challenge. Within each category, DOJ must demonstrate that "the statute could not be constitutionally enforced under any circumstances." *SEIU*, 393 Wis. 2d 38, ¶45. In other words, DOJ must establish that there are no constitutional applications of the JFC approval settlement mechanism within the two categories of cases.

¶16    We begin with first principles and consider whether settling cases in these categories falls within the executive's constitutional role to execute the law.

¶17    The quintessential core power belonging to the executive branch is the power to "take care that the laws be faithfully executed." WIS. CONST. ART. V, § 4. At the time of Wisconsin's founding, to "execute" meant to "make effectual or operative" and "to carry into effect." *Execute*, A NEW LAW DICTIONARY AND GLOSSARY 453 (1850). We have explained that this means once the Legislature has passed a law embodying its policy choices, it is the province of the executive branch to determine what the law requires and how to faithfully apply it. *Marklein*, 412 Wis. 2d 525, ¶¶15, 34. Part of that faithful application includes following any instructions for executing the law the Legislature prescribes by statute, and exercising discretion when the Legislature does not, so as to carry into effect the Legislature's policy choices. *See Att'y Gen. ex rel. Taylor v. Brown*,

1 Wis. 442 [513*], 449 [522*] (1853); *Marklein*, 412 Wis. 2d 525, ¶15. Thus, it is within the Legislature's domain to decide what the law shall be and to confer authority and discretion on the executive branch, which then must execute it "under and in pursuance of the law." *Dowling v. Lancashire Ins. Co.*, 92 Wis. 63, 70 (1896).

¶18 As one of three constitutional administrative officers, the Attorney General and the Department of Justice through which he acts are members of the executive branch of government. WIS. CONST. ART. VI, §§ 1, 3; *SEIU*, 393 Wis. 2d 38, ¶60. The constitution states that the Attorney General's powers and duties "shall be prescribed by law." WIS. CONST. ART. VI, § 3. In *SEIU*, the Legislature argued that because the Attorney General only possessed powers prescribed by statute, the settlement statute was constitutional because the Attorney General has no inherent constitutional authority to execute the law himself. *SEIU*, 393 Wis. 2d 38, ¶56. Thus, the Legislature argued that any power the Attorney General exercised was subject to legislative modification and, therefore, could not violate the separation of powers. *Id.* We disagreed. We explained that the Attorney General exercises executive authority when carrying out his statutory duties. *Id.*, ¶¶57–62. And while the Legislature could give powers to the Attorney General or take them away, that that did not mean the Legislature could, consistent with the constitution, grant to itself executive power in the first instance. *Id.*, ¶62. Said another way, just because the Legislature establishes the scope of the Attorney General's litigation powers does not mean that it can assume the execution of those powers itself. *See id.*

¶19 As an executive official, then, the Attorney General's constitutional role is to faithfully execute the law by prosecuting those actions the Legislature instructs him to by law. *See Flatley v. State*, 63 Wis. 2d 254, 261, 217 N.W.2d 258 (1974). This execution includes abiding by any restrictions or requirements the Legislature places in the statute limiting the Attorney General's discretion, as well as exercising any discretion the Legislature affords the Attorney General to effectuate its policies. *See City of Oak Creek*, 232 Wis. 2d 612, ¶21; *SEIU*, 393 Wis. 2d 38, ¶61.

¶20 The Attorney General and DOJ are tasked with executing numerous statutes detailing when and how they are to bring litigation. *See, e.g.*, WIS. STAT. §§ 165.25(1)–(2), (4)(ar), (6)(a)1., (6)(e); 299.95; 30.03. Civil enforcement actions, the first category DOJ raises here, are civil actions prosecuted by the Attorney General to enforce state laws. Such

actions include laws enforcing environmental, consumer protection, financial regulation, and medical assistance programs. State agencies typically refer these cases to DOJ for prosecution, but DOJ may also pursue some on its own initiative. In these actions, DOJ represents the state acting as the plaintiff, and any relief—civil forfeiture, injunctive relief, recovery costs of enforcement, or restitution—is obtained on behalf of the state.

¶21   In the second category of cases, the Attorney General and DOJ are statutorily tasked with prosecuting certain cases at the request of "the head of any department of the state government." WIS. STAT. § 165.25(2). These includes pursuing breach of contract cases for contracts "in which the state is interested," and "all actions, civil or criminal, relating to any matter connected" with any state department. § 165.25(2). Examples include civil actions to enforce contracts executive agencies enter into or to pursue compensation in tort for damages to state property. Like those in the first category, these are cases where the state acts as plaintiff and where it will not be required to pay money to a defendant in a settlement. Some of the statutes authorizing these suits give the Attorney General broader discretion about when and how to take action,[4] while others circumscribe that discretion by providing specific guidelines about prosecution and recoveries.[5] But in either event, it falls within the power

_____

[4] *See, e.g.,* WIS. STAT. §§ 299.95 (saying the "attorney general shall enforce chs. 281 to 285" with certain exceptions); 100.185(3) (authorizing the Attorney General to pursue an injunction against one it has reason to believe is fraudulently or deceptively advertising live musical performances); 202.18 (allowing DOJ to bring actions for violations of the statutes governing solicitation of funds for charitable purposes); 49.485 (stating that the Attorney General may recover forfeitures for those who state false claims for medical assistance); 100.55(4)(b)1. (authorizing the Attorney General to pursue an action "for temporary or permanent injunctive or other relief for any violation of this section").

[5] *See, e.g.,* WIS. STAT. §§ 30.03 (stating that at the request of the department of natural resources, the Attorney General could institute proceedings to recover forfeitures and that such forfeitures were to be "paid directly into the state treasury"); 49.49(6) (stating DOJ is to deposit in the state treasury in the general fund money awarded for medical assistance offenses); 221.1005 (tasking the Attorney General with instituting an action "to procure a judgment dissolving the bank" if a bank refuses to allow the banking division to inspect books).

of the Attorney General to effectuate the Legislature's statutorily enacted policy decisions with regard to these suits.

¶22    Thus, DOJ's litigation in these categories of cases is, rather straightforwardly, the execution of laws enacted by the Legislature. We said as much in *SEIU*, calling litigation on behalf of the state "predominately an executive function." *SEIU*, 393 Wis. 2d 38, ¶63. The Legislature agrees that litigation is at least in part an executive power, arguing at most that the power is shared with the Legislature rather than exclusively executive. And the idea that bringing lawsuits to execute or enforce the law constitutes executive power is uncontroversial. The United States Supreme Court has said that lawsuits are "the ultimate remedy for a breach of the law," and, as such, it is constitutionally the executive branch's role, not the Legislature's, to pursue that remedy so as to faithfully enforce the law. *Buckley v. Valeo*, 424 U.S. 1, 138 (1976); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) (saying that "the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch"). Other state high courts have likewise found the power for a government agency to bring civil suits to be quintessential executive power for similar reasons.[6]

¶23    Just as the pursuit of these claims is unequivocally an executive function, so is the settlement of them. When the Legislature gives authority to the Attorney General to pursue these claims, it necessarily confers discretion on how to pursue the claims to completion, through settlement or otherwise. *See Brown*, 1 Wis. at 449 [522*]; *Shoshone Bannock Tribes v. Reno*, 56 F.3d 1476, 1480–81 (D.C. Cir. 1995). As we have said, "[i]n executing the law, the executive branch must make decisions about how to enforce and effectuate the laws." *Marklein*, 412 Wis. 2d 525, ¶16. In the context of the Attorney General's authority to pursue certain claims, this means he is given the discretion to decide how to best execute the Legislature's statutory mandates and policy choices,

---

[6] *See In re Opinion of Justices*, 27 A.3d 859, 868–69 (N.H. 2011) ("Enforcement actions are within the 'special province' of the executive."); *State ex rel. Woods v. Block*, 942 P.2d 428, 436 (Ariz. 1997) ("[C]onducting litigation on behalf of the state, as authorized by the Legislature, is an executive function, because doing so carries out the purposes of the Legislature."); *State Through Bd. of Ethics for Elected Offs. v. Green*, 545 So.2d 1031, 1037 (La. 1989) ("Seeking punishment for [a] violation of the law is clearly an executive function").

including whether those ends are best served through a settlement. *See Buckley*, 424 U.S. at 139 (litigation on behalf of the United States "are subject to the direction, and within the control of, the Attorney-General.") (citing another source).

¶24    The executive branch, therefore, has the constitutional prerogative to settle the suits in these two categories of cases.

### D.  LITIGATION AND LEGISLATIVE POWER

¶25    Having established that the executive has the constitutional authority to settle lawsuits in these types of cases, the key question before us is whether the Legislature also possesses this constitutional authority in at least some suits within the two categories. The Legislature offers several arguments that it does, none of which succeed.

### 1.  *Litigation for the State Is Predominately Executive Power*

¶26    First, at oral argument the Legislature pointed to language in *SEIU* that it characterizes as establishing that litigation on behalf of the state is always a shared power. This is incorrect. Paragraph 63 of *SEIU* says in pertinent part:

> The Legislative Defendants . . . argue that the attorney general's power to litigate on behalf of the State is not, at least in all circumstances, within the exclusive zone of executive authority. We agree. While representing the State in litigation is predominately an executive function, it is within those borderlands of shared powers, most notably in cases that implicate an institutional interest of the legislature.

*SEIU*, 393 Wis. 2d 38, ¶63. The Legislature argues that the last sentence of this paragraph represents a broad determination that any time DOJ represents the state in litigation, it is exercising a power that is both executive and legislative.

¶27    This proffered interpretation of one sentence, pulled out of context, contradicts everything else *SEIU* says—including the sentences immediately preceding it. *SEIU* was a facial challenge, which means we considered only whether there was any instance in which the Legislature could constitutionally enforce the settlement approval mechanism. *Id.*, ¶4.

10

Finding some instances in which the Legislature had a legitimate constitutional role to play in the settlements of some suits—what we called "institutional interests"—we concluded that there were at least some circumstances in which settlements were not "within the exclusive zone of executive authority." *Id.*, ¶63. That statement makes no sense if the second sentence is read as holding that all litigation is a shared power. Moreover, we later reiterated that "the attorney general's litigation authority is not, in at least some cases, an exclusive executive power." *Id.*, ¶72 n.22. And it is "[t]hese types of cases"—that is, cases where litigation is not an exclusive executive power—that "fall under a shared powers analysis." *Id.*

¶28    While the last sentence of paragraph 63 could perhaps be more artfully worded, read in context, it communicates what the rest of the opinion explains. Litigation on behalf of the state is chiefly a core executive function. But where the Legislature has an institutional interest rooted in the constitution, such cases may fall within the borderlands of shared powers. *SEIU* simply does not stand for the contrary proposition that litigation on behalf of the state is always a power shared between the executive and legislative branches, nor is there any constitutional basis for such a claim.

¶29    That said, the Legislature contends it has two institutional interests that permit the settlement approval mechanism for at least some cases in these two categories. When considering these institutional interests, it is important to keep as our north star the quintessential power of the Legislature, which is the power to enact laws. This entails "whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; [and] to fix the limits within which the law shall operate." *State ex rel. Wis. Inspection Bureau v. Whitman*, 196 Wis. 472, 505, 220 N.W. 929 (1928). The legislature has broad discretion in which policies to pursue and in instructing the executive branch in how to carry them out. *Bushnell v. Town of Beloit*, 10 Wis. 155 [*195], 169 [*225] (1860). It is bounded, however, by the requirement that the statutes do not violate the constitution. *Id.* Once the legislature has made those choices and enacted them into law, its role with respect to that law—absent efforts to review its effectiveness or change it—is generally complete. *See Marklein*, 412 Wis. 2d 525, ¶¶22–23. With that in mind, we turn to the Legislature's arguments.

2. *Legislative Interest in State Revenue*

¶30    The Legislature first maintains that it has an institutional interest in revenue generated from settlement agreements. It roots this in its constitutional duty to levy a uniform tax. WIS. CONST. ART. VIII, § 5. The taxing clause, according to the Legislature, provides it with a constitutional interest in the settlement of cases where the state receives money, such as the settlements in the two categories here.

¶31    The taxing clause states that the Legislature "shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year; and whenever the expenses of each year shall exceed the income, the legislature shall provide for levying a tax for the ensuing year, sufficient, with other sources of income, to pay the deficiency as well as the estimated expenses of such ensuing year." WIS. CONST. ART. VIII, § 5.

¶32    In view of this clause, the Legislature says it must determine the sufficiency of the state's income each year in order to ensure "revenues are sufficient to defray the state's expenses." 74 WIS. OP. ATT'Y GEN. 202, 203 (1985) (OAG 39–85); *see also State ex rel. Owen v. Donald*, 160 Wis. 21, 122, 151 N.W.2d 331 (1915) (stating that "the constitution plainly contemplates legislative action to determine the sufficiency of income each year"). In other words, the Legislature argues that it has an institutional interest in revenue-producing settlements because, to perform its constitutional duty of setting the next year's tax, it must account for all "sources of income" to the state. The Legislature's argument seems to rest on the notion that the Legislature must be able to account ahead of time for how much money will come into the state's coffers in the upcoming year, and therefore be allowed veto power over settlement agreements in the event its math may be off.

¶33    This doesn't make sense. While undoubtedly the Legislature would be wise to account for all sources of income when determining the amount to tax in the coming year, it does not follow that the Legislature has a constitutional interest in controlling every executive function involving the collection of revenue, or even taxes. We fail to understand why the power and duty to levy taxes allows the Legislature to control the execution of the law. If the Legislature wishes to know the amount of any settlements, it may prescribe that by law. If it wishes to establish more specific direction regarding settlement revenues, it may do so by law, and

it already has in some areas.[7] *Cf. Whitman,* 196 Wis. at 508. The Legislature simply has not connected the dots for why the taxing power gives it a constitutional role in litigation involving the receipt of monies into state coffers.

¶34   The Legislature also attempts to support this constitutional interest by reference to several old statutes. The first provision the Legislature points to is an 1849 provision in which the Legislature, by law, "authorized and required" the Attorney General to "commence suit immediately" against a man who allegedly embezzled from the state. §§ 2, 4, Ch. 64, Laws of 1849. The statute required the Attorney General to "prosecute the same to final judgment." *Id.,* § 4. The Legislature argues that, because the statute seemingly did not allow the Attorney General to stop the litigation short of a "final judgment," it shows a shared interest in settling litigation.

¶35   This court has long recognized that early legislative enactments can assist in our interpretation of the constitution. *See, e.g., Thompson v. Craney*, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996); *Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, ¶19, 295 Wis. 2d 1, 719 N.W.2d 408; *Wis. Just. Initiative, Inc. v. Wis. Elections Comm'n*, 2023 WI 38, ¶21, 407 Wis. 2d 87, 990 N.W.2d 122. But this statute does not help the Legislature. As we explained in *SEIU*, the Legislature has the power to "give or take powers away from the attorney general." *SEIU*, 393 Wis. 2d 38, ¶62. That is exactly what the Legislature did in this statute. Through it, the Legislature gave the executive branch the authority to pursue a particular case and set the limits by which executive branch officials were to do so. Nothing in this statute, however, suggests the Legislature may grant itself the power to litigate on behalf of the state, just that it may authorize the executive branch to act in particular ways. We also fail to see how this statute supports the Legislature's argument that the taxing power gives it an interest in participating in the otherwise executive function of litigating on behalf of the state.

---

[7] *See* WIS. STAT. §§ 49.49(6) (stating that money the court awards DOJ in a medical assistance offense suit are to be placed into the general fund); 30.03 (stating that any money collected in an action to recover forfeitures on the behalf of the department of natural resources shall be paid directly into the treasury).

¶36 Additionally, the Legislature points to two statutes enacted in the early 1900s. We see little relevance in statutes adopted more than half a century after the adoption of our constitution. These offer negligible assistance in determining the boundary lines our constitution—adopted in 1848—gives to the executive and legislative branches. *See Thompson*, 199 Wis. 2d at 680 (discussing as relevant to constitutional meaning "the earliest interpretation of the provision by the legislature as manifested in the first law passed following adoption"). This is particularly true when neither statute appears to have undergone any judicial scrutiny. Therefore, we do not discuss these further.[8]

¶37 Trying one more tack, the Legislature analogizes the Legislature's constitutional duty to levy a tax with the interest recognized in *SEIU* in litigation involving "requests for the state to pay money to another party." *SEIU*, 393 Wis. 2d 38, ¶69. We explained in *SEIU* that "the constitution gives the legislature the general power to spend the state's money by enacting laws." *Id.* Therefore, there are times when the Legislature has an "institutional interest in the expenditure of state funds sufficient to justify the authority to approve certain settlements." *Id.* Here, the Legislature argues that the power to tax in conjunction with the constitutional power to appropriate money constitutes a general legislative interest over the "power of the purse."

---

[8] By way of reference, the Legislature points to a 1915 statute in which it created by law a committee with the "full power and authority to settle or compromise, or institute and prosecute such proceedings as may determine the interests of the state and effect a settlement of, any claim the state of Wisconsin may have against the United States" arising out of a particular statute. § 1, Ch. 624, Laws of 1915. The committee consisted of the Governor, Attorney General, and one other governor-appointed member. *Id.* We note that even this statute prescribed the parameters for executive officials and appointees to pursue and settle certain suits, not for the Legislature to settle lawsuits itself.

The Legislature also refers to a 1909 statute that charged the Attorney General along with a committee of members of the senate and assembly chosen by the Governor to "confer with the railroad corporations against which actions are pending in the name of the state for the collection of license fees, and to authorize said committee to make contracts for the settlement of such actions and to report to the legislature." See Ch. 441, Laws of 1909. Even with this, the Legislature does not connect how this statute proves that the Legislature has a constitutional interest in settlements through the taxing clause.

¶38     But *SEIU*'s use of the phrase "power of the purse" was tied to the constitutional power of the Legislature to spend the state's money in Article VIII, Section 2 of the Wisconsin Constitution, which states in pertinent part that, "No money shall be paid out of the treasury except in pursuance of an appropriation by law." *SEIU*'s application, then, is limited to money flowing out of the public fisc, which the Legislature has the plenary constitutional authority to control. WIS. CONST. ART. VIII, § 2. The taxing power is different; it does not grant the Legislature control over all the money that flows into the state's hands the way that the appropriation power grants the Legislature the power to control money paid out of the treasury. Rather, the taxing power is concerned with the Legislature's role in accounting for funds so that it can fulfill its duty to impose a uniform tax. *See id.*, § 5; *State ex rel. Owen*, 160 Wis. at 122. Moreover, if the Legislature has a constitutional interest in the execution of the laws every time an executive action involves money, there would be virtually no area where the Legislature could not insert itself into the execution of the law. The constitution cannot and does not mean that.

¶39     In all, the Legislature has failed to demonstrate that it has a constitutionally rooted institutional interest in revenue from settlements within the challenged categories of settlement.

### 3. *Legislative Interest in Policymaking*

¶40     The Legislature likewise argues that it has an institutional interest in settlements within these categories of cases because they could implicate public policy, in particular where the Attorney General could require as a term of a settlement that funds be paid to certain agencies or organizations that the Legislature may disagree with.

¶41     The Legislature provides two hypotheticals. In the first, it says that the Attorney General could influence policy in a settlement agreement with a landlord in which he agreed to pay millions of dollars to settle claims involving violation of housing laws. In the hypothetical, the settlement agreement contains a clause requiring the landlord to pay some of that money to the Attorney General's "preferred housing nonprofit" and some of it to "the Department of Agriculture, Trade and Consumer Protection" to spend "to help build low-income housing." The Legislature contends that such an agreement would implicate the Legislature's interest in policymaking because the Legislature may possess different ideas about how to best create low-income housing, and choosing

between different policy options "lies at the heart of the Legislature's policy-setting power." Similarly, in the second hypothetical, the Legislature argues that the Attorney General in a settlement agreement with opioid manufacturers could add a term requiring that the money would go to rehabilitation programs for those suffering from addiction. This too would implicate the Legislature's ability to choose between alternate policy proposals, the Legislature says, placing it within the realm of shared powers.

¶42 The Legislature further cites *State ex rel. Vanko v. Kahl* for the proposition that it is the Legislature that has the prerogative to choose the "best public policy" among the "alternatives available." 52 Wis. 2d 206, 216, 188 N.W.2d 460 (1971). These quotes from *Vanko* are drawn from a discussion about whether the court itself could or should weigh in on the policy choice the Legislature made in enacting a particular statute. *Id.* We stated that public policy "is for the legislature to establish, with courts not expected nor permitted to substitute their reaction to the alternatives available for the conclusion reached by the legislative branch." *Id.* It is without question that when the Legislature has made its policy decision, neither the court nor the executive branch can substitute their own judgment to pursue an "alternative" policy they think superior to the Legislature's choice. But that is not the situation here.

¶43 The Legislature argues that if the law it passed grants discretion to the Attorney General in the fashion illustrated by its hypotheticals, the Legislature may constitutionally intervene to stop exercises of discretion it disagrees with. This takes too broad a view. In executing the law, executive branch officials must decide how to effectuate the law's policies, and those decisions will necessarily have policy implications. *See Marklein*, 412 Wis. 2d 525, ¶16. The Legislature's argument that it can step into the shoes of the executive when executive action impacts policy would eviscerate the separation of powers.

¶44 Executive action within the scope of statutory authority and employing the discretion inherent in execution of the law will often have a public policy impact. It is the Legislature that has given this authority and discretion in the first place, including any limitations on how settlements are to be spent. When the Attorney General, therefore, decides where settlement proceeds are to be directed, he is acting within the scope of the authority the Legislature gave him. If the Legislature is dissatisfied with the discretion it left to the Attorney General, it may amend the laws accordingly. In fact, the Legislature has done so with respect to some of

16

the suits within the two categories in this case, instructing that any funds recovered go into the general treasury. *See* WIS. STAT. §§ 30.03; 49.49(6). However, the Legislature may not step into the shoes of the executive branch or otherwise control executive decisions made within the statutory authority simply because exercising that authority has policy implications. It is the "text of the statutes" by which the Legislature announces its policy decisions and how they may be achieved. *Marklein*, 412 Wis. 2d 525, ¶¶16, 21.

¶45 As such, the Legislature has likewise failed to demonstrate a constitutional interest in litigation of these two categories of cases based on its general constitutional interest in policymaking.

4. *Summary*

¶46 Putting all this together, the Legislature has conferred upon the Attorney General through various statutes the ability to pursue civil enforcement and agency-directed lawsuits. When DOJ acts to carry out those statutory litigation directives, it is exercising executive authority. And once the Legislature grants power by statute to the Attorney General, unless an independent constitutional interest of the Legislature is implicated, the Legislature's involvement has ended. *See id.*, ¶23.

¶47 Within the two categories of cases challenged here, the Legislature has not identified a constitutional interest for itself. This means litigation in these categories falls within the core constitutional authority of the executive branch to execute the law. And the statute whereby the Legislature grants to itself a role in executing the law by mandating that settlements receive pre-approval from JFC is unconstitutional.

III. CONCLUSION

¶48 The Legislature may prescribe the scope of the Attorney General's authority and discretion in the categories of civil suits challenged today. But to do so, it must pass a statute. It cannot assume for itself the power to execute a law it wrote. The challenged statute permits exactly this. The settlement approval process allows a committee of the Legislature to control how the executive exercises its lawfully given statutory authority. While that may be permissible in the realm of shared powers, it is impermissible in the realm of core powers. As the Legislature has failed to demonstrate that these types of cases implicate an

institutional interest granting the Legislature a seat at the table, the powers at issue are core executive powers. Accordingly, there is no constitutional justification for requiring JFC sign-off on settlement agreements within these categories of cases. The statute as applied to these cases violates the Wisconsin Constitution's separation of powers.

¶49   For this reason, we reverse the decision of the court of appeals and affirm the circuit court's decision granting DOJ's motions for summary judgment.

*By the Court.*—The decision of the court of appeals is reversed.