COURT OF APPEALS
DECISION
DATED AND FILED

July 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1129**

Cir. Ct. No. **2001CF43**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN EX REL. CHRISTOPHER P. KAWLESKI,

PETITIONER-APPELLANT,

V.

STATE OF WISCONSIN,

RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

¶1 KLOPPENBURG, P.J. This appeal raises issues regarding the structure and administration of bifurcated sentences for criminal defendants who were sentenced to bifurcated sentences for felonies committed between

December 31, 1999 and February 2003. Before proceeding, we define the following terms.

¶2 A "bifurcated sentence" comprises a term of initial confinement and a term of extended supervision. *See* WIS. STAT. § 973.01(1), (2)(b) and (d) (1999-2000) (setting forth the structure of a bifurcated sentence as consisting of a "term of confinement in prison followed by a term of extended supervision").[1] The "total length of the bifurcated sentence" is the sum of the term of confinement and the term of extended supervision. *See* § 973.01(2)(a), (8)(a) (1999-2000). "Confinement" refers to the period of time that is imposed by the circuit court as the initial confinement part of the bifurcated sentence and which is served by the defendant in prison following imposition of the defendant's sentence, before the defendant is released for the first time to serve the extended supervision part of the bifurcated sentence. *See* § 973.01(2) (1999-2000). "Reconfinement" refers to the period of time that is served by the defendant upon the defendant's return to prison, as ordered after extended supervision has been revoked. *See* *State v. Brown*, 2006 WI 131, 298 Wis. 2d 37, 725 N.W.2d 262 (referring to the time that a defendant is ordered to return to prison after revocation of extended supervision as "reconfinement").

¶3 The "maximum discharge date" is the date on which a defendant has completed the bifurcated sentence. *See* WIS. STAT. § 973.01(7) (1999-2000) ("The department of corrections may not discharge a person who is serving a bifurcated sentence from custody, control and supervision until the person has served the

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

2

entire bifurcated sentence."); *State v. Thomas*, 2000 WI App 162, ¶¶6 n.2, 19, 238 Wis. 2d 216, 617 N.W.2d 230 (the "maximum discharge date" "signals the end of a criminal sentence" and is, therefore, "the date on which the sentence would ... [be] completed"); *State v. Stanley*, 2014 WI App 89, ¶22, 356 Wis. 2d 268, 853 N.W.2d 600 (maximum discharge date is "the completion of the criminal sentence").

¶4      In June 2001, the circuit court convicted Christopher Kawleski and imposed a twenty-year bifurcated sentence, comprising two years and six months of initial confinement and 17 years and six months of extended supervision.  After Kawleski was released from confinement to extended supervision, his extended supervision was revoked twice, and he was reconfined each time.

¶5      Two issues are raised on appeal.  The first is the determination of Kawleski's maximum discharge date as of his third release to extended supervision.  The second is whether the statute that authorizes the executive branch, as opposed to a circuit court, to order the period of reconfinement after revocation of extended supervision violates the separation of powers doctrine. After initial briefing by Kawleski, acting pro se, and the State, this court appointed pro bono counsel for Kawleski and the parties filed replacement briefs.

¶6      As to the first issue, the State has now conceded that the statutes regarding sentence structure that were in effect in 2000, when Kawleski committed the offense for which he was convicted and sentenced, apply to the determination of his maximum discharge date.  *See State ex rel. Singh v. Kemper*, 2016 WI 67, ¶36, 371 Wis. 2d 127, 883 N.W.2d 86 (Generally, "an inmate will be

3

convicted and sentenced under the law that was in effect at the time the offense was committed.").[2]  Kawleski argues that, under those statutes, his maximum discharge date as of his third release to extended supervision is determined by subtracting the time that Kawleski has already served on extended supervision from the term of extended supervision originally imposed as part of the bifurcated sentence.  That calculation results in a maximum discharge date of February 10, 2028.  The State argues that, under those statutes, Kawleski's maximum discharge date is determined by subtracting the time that Kawleski has served in confinement and reconfinement from the total length of the bifurcated sentence.  That calculation results in a maximum discharge date of May 14, 2033.  The circuit court accepted the State's determination and denied Kawleski's petition for a writ of habeas corpus on this ground.

¶7      On this issue, we agree with Kawleski.  That is, we conclude that, under the applicable statutory language, a defendant's maximum discharge date, as of the defendant's release to extended supervision from reconfinement, is determined by subtracting the time that the defendant has already served on extended supervision from the term of extended supervision imposed as part of the bifurcated sentence.  We highlight that this applicable statutory language applies only to defendants like Kawleski who were convicted and sentenced to bifurcated sentences for felonies committed between December 31, 1999, when the language was first in effect, *see* 1997 Wis. Act 283, §§ 207, 419 (Truth-in-Sentencing I),

_____

[2] More accurately, the parties agree that the sentencing statutes that were in effect at the time of Kawleski's conviction and sentencing apply, but they do not dispute that, consistent with the law cited in the text, those statutes are identical to the statutes that were in effect when Kawleski committed the offense in 2000.

4

and February 2003, when the language was amended, *see* 2001 Wis. Act 109, §§ 401, 9459(1) (Truth-in-Sentencing II).

¶8     Separately, Kawleski argues that he is entitled to release now, earlier than the maximum discharge date of February 10, 2028, because he was unlawfully reconfined after his second revocation of extended supervision. Kawleski argues that he was unlawfully reconfined because the statute that applied to his second reconfinement proceeding in 2018, and which remains in effect, violates the separation of powers doctrine by providing that the executive branch—either the division of hearings and appeals in the department of administration, or the department of corrections—orders the period of reconfinement, as opposed to a circuit court. We decline to reach the merits of this issue because Kawleski fails to show that, even if we were to decide this issue in his favor, he would be entitled to release earlier than his properly determined maximum discharge date of February 10, 2028.

¶9     Because Kawleski is not entitled to release now based on the February 10, 2028 maximum discharge date, we affirm the circuit court's order denying his petition for a writ of habeas corpus, but on this other ground.

## BACKGROUND

¶10    As stated, in June 2001, Kawleski received a 20-year bifurcated sentence, comprising two years and six months of initial confinement and 17 years and six months of extended supervision. Kawleski was initially released to extended supervision on December 16, 2003. His extended supervision was revoked on August 8, 2005. Following a hearing in the circuit court, the court

ordered Kawleski reconfined for two years.[3] Kawleski was again released to extended supervision on May 22, 2007. On November 15, 2018, Kawleski's extended supervision was again revoked. The division of hearings and appeals ordered Kawleski reconfined for four years, seven months, and 26 days.[4] Kawleski was released for a third time to extended supervision on July 2, 2022. The state department of corrections (the department) informed Kawleski that his maximum discharge date is May 14, 2033, based on the time that he had served in confinement and reconfinement as of July 2, 2022.

¶11    Kawleski, acting pro se, filed a petition for a writ of habeas corpus in this court. In his petition, Kawleski argued that the department illegally extended his sentence past his maximum discharge date, which he asserted is June 1, 2021,20 years after the date of conviction. This court declined to exercise its jurisdiction and referred the petition to the circuit court. *See **State ex rel. Dowe v. Circuit Ct. for Waukesha Cnty.***, 184 Wis. 2d 724, 732, 516 N.W.2d 714 (1994) (permitting appellate courts to refer a petition for habeas corpus to the circuit court when the circuit court has concurrent jurisdiction).

¶12    The circuit court held a hearing on Kawleski's petition, at which the court heard testimony from the offender records supervisor at Oshkosh

---

[3] At the time of Kawleski's first reconfinement proceeding, the statute provided that the circuit court for the county in which the defendant was initially convicted was to order the period of reconfinement after revocation of extended supervision. *See* WIS. STAT. § 302.113(9)(am) (2003-04).

[4] At the time of Kawleski's second reconfinement proceeding, the statute provided (and continues to provide) that the reconfinement order is to be made by the division of hearings and appeals if a revocation hearing is held, or by the department of corrections if the hearing is waived. *See* WIS. STAT. § 302.113(9)(ag), (am).

Correctional Institution, where Kawleski was reconfined before he was released to extended supervision on July 2, 2022. The supervisor explained how the department determined Kawleski's maximum discharge date to be May 14, 2033. Based on this testimony, which the court credited, the court denied Kawleski's petition.

¶13 Kawleski initiated this appeal without legal counsel. After briefing was complete, this court determined that it would be productive for the parties and the court for Kawleski to be assigned counsel, if he decided to accept such counsel, to adequately address the issues that he raised. Specifically, this court concluded that we would benefit from argument addressing at least the following issues: (1) determining which version of WIS. STAT. § 302.113(9)(c) applies when determining Kawleski's maximum discharge date—the 1999-2000 version that was in effect when Kawleski committed his offense; the 2023-24 version, which includes a provision that the State relied on in its initial briefing and which did not become effective until 2003; or some other version; and (2) determining the correct maximum discharge date under the applicable version of the statute. With Kawleski's consent, this court appointed pro bono counsel to represent Kawleski, and both parties completed a new round of briefing.[5]

---

[5] This court appointed Attorney Samuel M. Mitchell of the firm Husch Blackwell LLP to represent Kawleski in this appeal through the State Bar of Wisconsin's Appellate Practice Section pro bono program. We commend the diligent and thorough work of Attorney Mitchell and Attorney Alyssa M. LeRoy of the same firm.

We note that appointed counsel's briefs on appeal do not comply with WIS. STAT. RULE 809.19(8)(bm), which states that a brief "must have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court explained when it amended the rule in 2021 that the pagination requirements avoid "the confusion of having two different page numbers" on certain pages of an electronically filed brief. S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).

## DISCUSSION

¶14   Kawleski raises two issues on appeal: (1) whether the department properly determined his maximum discharge date after his third release to extended supervision under WIS. STAT. § 302.113 (1999-2000); and (2) whether he is entitled to release now, earlier than his properly determined maximum discharge date, because § 302.113(9)(am), which applies to his second reconfinement proceeding, violates the separation of powers doctrine by vesting the executive branch with the power to order the period of reconfinement after revocation of extended supervision.

### I.  Maximum Discharge Date

¶15   Kawleski argues that the department improperly interpreted and applied WIS. STAT. § 302.113 (1999-2000) in determining his maximum discharge date and that, under a correct interpretation, his maximum discharge date is February 10, 2028.[6]

---

[6] On appeal, Kawleski does not pursue an argument that he made in the circuit court that, based on his 20-year bifurcated sentence, his maximum discharge date is 20 years from his date of conviction, or June 1, 2021. Because Kawleski now argues that his maximum discharge date is in 2028 rather than 2021, the State argues that he is not entitled to habeas corpus relief because he cannot argue that he is currently being illegally detained. *See State ex rel. Lopez-Quintero v. Dittmann*, 2019 WI 58, ¶14, 387 Wis. 2d 50, 928 N.W.2d 480 (a person seeking habeas relief must show that the person is unlawfully restrained of the person's liberty). However, the State fails to account for the fact that Kawleski's separation of powers argument is a claim of current unlawful restraint, providing a proper habeas vehicle. Beyond that, the State fails to develop an argument that under these circumstances, when Kawleski properly sought habeas corpus relief based on the argument that he has now abandoned and he now argues for relief based on a different alleged legal error, he is precluded from seeking relief on the first issue in this appeal.

(continued)

*A. Standard of Review*

¶16   "'The interpretation and application of statutes present questions of law that we review independently.'" ***Brey v. State Farm Mut. Auto. Ins. Co.***, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1 (quoted source omitted).  Statutory interpretation "'begins with the language of the statute.'  If the meaning of the language is plain, our inquiry ordinarily ends." ***Id.***, ¶11 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶17   "Importantly, 'ascertaining the plain meaning of a statute requires more than focusing on a single sentence or portion thereof.'" ***Brey***, 400 Wis. 2d 417, ¶11 (quoted source omitted).  When deciding whether language has a plain meaning, courts must read the words in context and with a view to the place of those words in the overall statutory scheme.  ***Id.***  "Properly applied, the plain-meaning approach is not 'literalistic'; rather, the ascertainment of meaning involves a 'process of analysis' focused on deriving the fair meaning of the text itself." ***Id.*** (citing ***Kalal***, 271 Wis. 2d 633, ¶¶46, 52). "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute

---

Separately, because, on our de novo review, we interpret and apply the 1999-2000 version of WIS. STAT. § 302.113 to determine Kawleski's maximum release date, we do not reach his additional argument that the circuit court violated the ex post facto clauses of the Wisconsin and United States constitutions when it applied the version of § 302.113 that took effect on February 1, 2003, after Kawleski's conviction and sentencing.

is applied according to this ascertainment of its meaning.'" **Kalal**, 271 Wis. 2d 633, ¶46 (quoted source omitted).

## B. Applicable Statutes

¶18 WISCONSIN STAT. § 973.01 (1999-2000) establishes the framework for the circuit court's imposition of a bifurcated sentence. Under WIS. STAT. § 973.01(1) (1999-2000), a "court shall impose a bifurcated sentence" for, pertinent here, "a felony committed on or after December 31, 1999." "[A] bifurcated sentence … consists of a term of confinement in prison followed by a term of extended supervision under [WIS. STAT. §] 302.113." Sec. 973.01(1) (1999-2000). Under § 973.01(7) (1999-2000), "[t]he department of corrections may not discharge a person who is serving a bifurcated sentence from custody, control and supervision until the person has served the entire bifurcated sentence."

¶19 WISCONSIN STAT. § 302.113 (1999-2000) governs the administration of a bifurcated sentence. *See* § 302.113(1) (1999-2000) ("An inmate is subject to this section if [the inmate] is serving a bifurcated sentence imposed under [WIS. STAT. §] 973.01.").

¶20 Subsections (2), (3), (7) and (9) of WIS. STAT. § 302.113 (1999-2000) govern the release of an inmate who is serving a bifurcated sentence to extended supervision. Under WIS. STAT. § 302.113(2) (1999-2000), "[e]xcept as provided in subs. (3) and (9), an inmate subject to this section is entitled to release to extended supervision after [the inmate] has served the term of confinement in prison portion of the [bifurcated] sentence imposed under [WIS. STAT. §] 973.01…." WISCONSIN STAT. § 302.113(7) (1999-2000), states: "Any inmate released to extended supervision under this section is subject to all conditions and

10

rules of extended supervision until the expiration of the term of extended supervision portion of the bifurcated sentence."

¶21    The first exception regarding release to extended supervision, WIS. STAT. § 302.113(3) (1999-2000), addresses the department's authority to extend an inmate's confinement and the effect of any such extension on the structure of the bifurcated sentence.[7]  Subsection (3) provides that the department, on its own, "may extend the term of confinement in prison portion of the inmate's bifurcated sentence" as a result of certain misconduct by the inmate while incarcerated.  *See* § 302.113(3)(a)-(bm)  (1999-2000).    The  following  subparts  of  § 302.113(3) provide two clarifications: any extensions of confinement may not exceed the total length of the bifurcated sentence, *see* § 302.113(3)(c) (1999-2000) ("No extension of a term of confinement in prison under this subsection may require an inmate to serve more days in prison than the total length of the bifurcated sentence imposed under [WIS. STAT. §] 973.01."); and any extensions of confinement shall reduce the original term of extended supervision so that the total length of the bifurcated sentence does not change, *see* § 302.113(3)(d) (1999-2000) ("If the term of confinement in prison portion of a bifurcated sentence is increased under this subsection, the term of extended supervision is reduced so that the total length of the bifurcated sentence does not change.").

¶22    The second exception regarding release to extended supervision, WIS. STAT. § 302.113(9) (1999-2000), addresses the revocation of extended

---

[7] This appeal does not raise any issues regarding the department's extension of confinement under WIS. STAT. § 302.113(3) (1999-2000), but our analysis is informed by the use of the terms "length of the bifurcated sentence," "term of confinement," and "term of extended supervision" in subsection (3).

11

supervision. Under § 302.113(9)(a) (1999-2000), if a person violates a condition of extended supervision, the extended supervision may be revoked and the person is to be "returned to prison for any specified period of time that does not exceed the time remaining on the bifurcated sentence. The time remaining on the bifurcated sentence is the total length of the bifurcated sentence, less time served by the person in custody before release to extended supervision." Under § 302.113(9)(c) (1999-2000), "[a] person who is subsequently released to extended supervision after service of the period of [reconfinement] … is subject to all conditions and rules under sub. (7) until the expiration of the term of extended supervision portion of the bifurcated sentence."

### C. Additional Background

¶23    The parties do not dispute the following facts. As of July 2, 2022, Kawleski had served nine years, one month, and 18 days in confinement and reconfinement, and eleven years, ten months, and 22 days on extended supervision.

¶24    The department determined Kawleski's maximum discharge date by subtracting from the length of Kawleski's 20-year bifurcated sentence the time that he had served in confinement and reconfinement as of July 2, 2022 (nine years, one month, and 18 days). According to the department, this calculation results in ten years, ten months, and twelve days as the time remaining on Kawleski's sentence to be served on his release to extended supervision, which in turn results in a maximum discharge date of May 14, 2033.

¶25    Based on the department's chronology, if, instead as Kawleski contends, his maximum discharge date is determined by subtracting from the term of extended supervision imposed in his bifurcated sentence (17 years and six

months) the time that he served on extended supervision as of July 2, 2022 (eleven years, ten months, and 22 days), then the time remaining to be served on his release to extended supervision is five years, seven months, and eight days. This calculation results in a maximum discharge date of February 10, 2028.

## D. Analysis

¶26 We conclude that, under a plain language interpretation of WIS. STAT. § 302.113 (1999-2000), Kawleski is correct in his determination of his maximum discharge date as of his third release to extended supervision.

¶27 Reading WIS. STAT. § 302.113(2), (3), (7), and (9) (1999-2000) together, we discern the following structure of a bifurcated sentence. A bifurcated sentence consists of three periods of time: the *length of the bifurcated sentence*, *see* § 302.113(3)(c), (d), (9)(a) (1999-2000) (referring to the "length of the bifurcated sentence"); the *term of confinement* portion, *see* § 302.113(2)-(4) (1999-2000) (referring to the "term [or terms] of confinement" or "term [or terms] of confinement in prison portion"); and the *term of extended supervision* portion, *see* § 302.113(3)(d), (7), (9)(c) (1999-2000) (referring to the "term of extended supervision" or "term of extended supervision portion"). Barring any extensions of confinement by the department while a defendant is in prison, the defendant serves the term of confinement and the term of extended supervision as imposed in, and for the length of, the bifurcated sentence.

¶28 If the defendant's extended supervision is revoked, the defendant shall be returned to prison to serve a period of reconfinement that does not exceed the length of the bifurcated sentence minus the time the defendant has already served in confinement (and any prior reconfinement). WIS. STAT. § 302.113(9)(a)

13

(1999-2000). That is, the defendant cannot be confined and reconfined for longer than the total length of the bifurcated sentence.

¶29    When the defendant is released to extended supervision after serving the confinement (or reconfinement) time, the defendant is subject to the conditions and rules of extended supervision until the end of the term of extended supervision portion of the bifurcated sentence. WIS. STAT. § 302.113(7), (9)(c) (1999-2000).

¶30    As we now explain, these statutory provisions treat confinement and reconfinement differently from extended supervision in one respect that is significant to this appeal. It is true that they limit the time that a defendant can serve in confinement and reconfinement to the total length of the bifurcated sentence. But critically, they limit the time that a defendant can serve on extended supervision only to the term of extended supervision that is imposed as part of the bifurcated sentence.

¶31    As stated, the total time that a defendant serves in confinement and reconfinement cannot exceed the length of the bifurcated sentence. WIS. STAT. § 302.113(9)(a) (1999-2000). To ensure compliance with that requirement, the longest period that a defendant can be reconfined equals the length of the bifurcated sentence minus the sum of all periods that the defendant has already served in confinement and reconfinement. Sec. 302.113(9)(a) (1999-2000). This subsection defines the "time remaining on the bifurcated sentence" for the purpose of ensuring that the length of the bifurcated sentence is not increased by the periods of reconfinement. Sec. 302.113(9)(a) (1999-2000). That is, this language sets the outer limit of reconfinement in relation to the length of the bifurcated sentence.

¶32    The only provision within WIS. STAT. § 302.113 (1999-2000) that ties together the concepts of confinement, extended supervision, reconfinement, and the length of the bifurcated sentence is § 302.113(3)(d) (1999-2000).  This provision requires a reduction of the term of extended supervision by the amount of any extension of the term of confinement or reconfinement based on the defendant's misconduct while the defendant is in prison, "so that the total length of the bifurcated sentence does not change."  Sec. 302.113(3)(d) (1999-2000).

¶33    Otherwise, there is no language in WIS. STAT. § 302.113 (1999-2000) that sets the time a defendant is to serve on extended supervision based on the time in confinement and reconfinement, based on the length of the bifurcated sentence, or based on any portion of the bifurcated sentence other than the term of extended supervision.  Rather, the only length attributed to extended supervision referenced throughout § 302.113 (1999-2000) is the term of extended supervision imposed as part of the bifurcated sentence.  *See* § 302.113(7), (9)(c) (1999-2000) (referring to "the expiration of the term of extended supervision portion of the bifurcated sentence").  In other words, there is no language in the statute that authorizes an increase in the term of extended supervision portion of the bifurcated sentence, or that provides for a defendant to serve more than the term of extended supervision imposed as part of the bifurcated sentence.  Rather, the "term of extended supervision" remains unchanged, subject only to reduction pursuant to § 302.113(3)(d) (1999-2000), regardless of how much time a defendant has served in confinement and reconfinement and on extended supervision.

¶34    To ensure that a defendant serves the entire term of extended supervision, when a defendant is released to extended supervision after reconfinement, then the time that the defendant has already served on extended supervision must be subtracted from the term of extended supervision.  That

difference is the time that remains to be served on extended supervision and results in the maximum discharge date from extended supervision. The fact that there is no language in the statute authorizing adjustments to the "term of extended supervision" relative to the time spent in confinement or reconfinement or relative to the total length of the bifurcated sentence—other than in the exception involving misconduct while in prison in WIS. STAT. § 302.113(9)(d) (1999-2000)—confirms that there is no such connection. The legislature was aware of how it could create such a connection, *see* § 302.113(9)(a) (1999-2000), and it did not. *See Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶¶35-36, 341 Wis. 2d 607, 815 N.W.2d 367 (explaining that "if the legislature had intended to accomplish what a party is urging on the court…, the legislature knew how to draft that language and could have done so had it wished").

¶35    Accordingly, under a plain language interpretation of WIS. STAT. § 302.113(2), (3), (7), and (9) (1999-2000), read as a whole, for a defendant who is released to extended supervision after reconfinement, the period of extended supervision to be served equals the term of extended supervision portion of the bifurcated sentence minus the time the defendant has already served on extended supervision.

¶36    The State's argument is to the effect that the term of extended supervision portion of the bifurcated sentence, as well as the time previously served on extended supervision, are irrelevant to the calculation of extended supervision to be served after release from reconfinement. This argument is unpersuasive for two reasons. First, it reads out of the statute the references to "term of extended supervision" in WIS. STAT. § 302.113(7) and (9)(c) (1999-2000) (referring to "the expiration of the term of extended supervision portion of the bifurcated sentence"). Further, it replaces that language with language that is not

16

in the statute. We are free to do neither. *See State v. Neill*, 2020 WI 15, ¶23, 390 Wis. 2d 248, 938 N.W.2d 521 ("'One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning.'" (quoted source omitted)); *State v. Wiedmeyer*, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes…."); *Valadez v. Valadez*, 2022 WI App 2, ¶¶20-21, 400 Wis. 2d 523, 969 N.W.2d 770 (2021) (explaining that courts are not free to ignore words and phrases in statutes); *State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165 ("[W]e interpret the words the legislature actually enacted into law.").

¶37 The State asserts that the phrase itself, "term of extended supervision," means the "remainder of [a defendant's] sentence" after the defendant has served the term of confinement and any periods of reconfinement. But the State does not provide a statutory basis for this assertion. As explained above, the phrase "term of extended supervision" is a statutory term of art, which refers to the "term of extended supervision" imposed as part of a bifurcated sentence. *See* WIS. STAT. § 973.01(1) (1999-2000) ("[A] bifurcated sentence … consists of a term of confinement in prison followed by a term of extended supervision."); WIS. STAT. § 302.113(7) (1999-2000) (A defendant who is released to extended supervision, either after confinement or reconfinement, "is subject to all conditions and rules of extended supervision until the expiration of the term of extended supervision portion of the bifurcated sentence."); § 302.113(9)(c) (1999-2000) (same). Under these statutes, the "term of extended supervision" is not dependent on, and has no connection to, the period or periods of time a defendant has served in reconfinement. The State's argument requires that we replace "term of extended supervision" in § 302.113(7) and (9)(c) (1999-2000) with "remainder

17

of the bifurcated sentence after the defendant has served the term of confinement and any periods of reconfinement." We have no authority to do so.

¶38 The State argues that its interpretation is supported by the language in the subsection addressing reconfinement, WIS. STAT. § 302.113(9)(a) (1999-2000).[8] To repeat, that subsection limits the reconfinement time that may be imposed after revocation of extended supervision to "the time remaining on the bifurcated sentence," which it defines as the difference between the length of the bifurcated sentence and the time already served in confinement and reconfinement. Sec. 302.113(9)(a) (1999-2000). That subsection does not address the time to be served on extended supervision after release from reconfinement, nor does it state that its definition of "time remaining on the bifurcated sentence" applies to or alters the "term of extended supervision" as defined and used in WIS. STAT. § 973.01 (1999-2000) or other subsections of § 302.113 (1999-2000). The State fails to show that the language in § 302.113(9)(a) (1999-2000) regarding reconfinement supports its argument.

---

[8] Despite the State's explicit concession that the 1999-2000 version of WIS. STAT. § 302.113 applies to this issue, the State inexplicably cites to WIS. STAT. § 302.113(9)(am), even though that subsection did not exist in the 1999-2000 version of the statute. Rather, at the time of Kawleski's conviction and sentencing, the then-existing subsection was § 302.113(9)(a), which was later renumbered § 302.113(9)(am). 2001 Wis. Act 109, §§ 397, 9459(1) (effective February 1, 2003). The amendment did not materially change the pertinent language in that subsection regarding reconfinement after revocation of extended supervision. That is, as in the predecessor subsection applicable here, § 302.113(9)(a) (1999-2000), a defendant may be reconfined for a period of time that does not exceed the length of the bifurcated sentence minus the time the defendant has already served in confinement and any prior reconfinement. *Compare* § 302.113(9)(am) (providing that the reconfinement time cannot exceed the length of the bifurcated sentence minus time served in confinement and reconfinement), *with* § 302.113(9)(a) (1999-2000) (providing that the reconfinement time cannot exceed the length of the bifurcated sentence minus time served in custody). Thus, rather than disregard the State's argument based on the inapplicable § 302.113(9)(am), we address that argument but base our analysis on the language in the applicable § 302.113(9)(a) (1999-2000).

¶39     The State argues that the amended (and current) version of WIS. STAT. § 302.113(9)(c) "clarified" what the legislature meant but did not state in § 302.113(9)(c) (1999-2000).   Under 2001 Wis. Act 109, § 401, this subsection was substantively changed.   As noted, the 1999-2000 version of this subsection provides that a defendant who is released to extended supervision "is subject to all conditions and rules … until the expiration of the term of extended supervision portion of the bifurcated sentence."  Sec. 302.113(9)(c) (1999-2000).   By contrast, the amended (and current) version of this subsection provides that a defendant who is released to extended supervision "is subject to all conditions and rules … until the expiration of the remaining extended supervision portion of the bifurcated sentence," and defines the "remaining extended supervision portion of the bifurcated sentence" as "the total length of the bifurcated sentence, less the time served" in confinement and reconfinement.   Sec. 302.113(9)(c).   Thus, this new version of the subsection replaces "*term* of extended supervision portion of the bifurcated sentence" with "*remaining* extended supervision portion of the bifurcated sentence" and defines that remaining portion as the total length of the bifurcated sentence minus the time served in confinement and reconfinement.   By its plain language, the new version severs the time to be served on extended supervision after release from reconfinement from the term of extended supervision in the bifurcated sentence, and connects it instead to the length of the bifurcated sentence and the time already served in confinement and reconfinement.

¶40     As shown, the new language in WIS. STAT. § 302.113(9)(c) provides a definition of the time to be served on extended supervision after release from reconfinement that did not exist in the 1999-2000 version of the statute.  The State provides no legal authority to support its argument that the new language merely

"clarifies" the old. To the contrary, the law cited above precludes us from changing the words the legislature did use and adding language that the legislature did not use to give § 302.113(9)(c) (1999-2000) the meaning propounded by the State.

¶41 The State argues that our plain language interpretation of the applicable statutes would have the absurd result of exposing Kawleski to a longer potential period of reconfinement, if his extended supervision is again revoked, than the time he has left to serve on extended supervision. That is, under our interpretation, as of July 2, 2022, Kawleski must serve five years, seven months, and eight days of extended supervision to reach his maximum discharge date, but if his extended supervision were again to be revoked before that date, he could be reconfined for up to ten years, ten months, and twelve days. We do not discern absurdity, because the legislature could have reasonably intended to penalize extended supervision violations with the potential for more reconfinement time relative to extended supervision time to provide greater deterrence against such violations. It does not matter if the legislature later decided to heighten that deterrence by adding the potential for more extended supervision time, by amending the statute to that effect. In neither case is the level of deterrence reflected in WIS. STAT. § 302.113(9)(c) (1999-2000) necessarily unreasonable. *See State v. H.C.*, 2025 WI 20, ¶30, __ Wis. 2d __, __ N.W.3d __ (noting that courts should not add words to a statute to articulate a policy choice different from the policy choice made by the legislature).

¶42 The State also points to a provision pertaining to parole under the indeterminate sentencing law that was in effect before Kawleski was convicted and sentenced. That provision states that a person whose parole is revoked may be returned "to prison for a period up to the remainder of the sentence," and defines

the "remainder of the sentence" as "the entire sentence, less time served in custody prior to parole." WIS. STAT. § 302.11(7)(a) (1997-98). However, the State does not explain why the statutes regarding revocation of parole under the indeterminate sentencing law should inform our interpretation of the statutes regarding revocation of extended supervision under the bifurcated sentencing law. Even if the State were to show that parole is legally comparable to extended supervision, the cited statute addresses only the return to prison, not the release on parole. The State fails to cite the statute that does apply to release on parole, § 302.11(7)(d) (1997-98), which provides that a person released on parole "is subject to all conditions and rules of parole until expiration of sentence." As explained above, there is no similar statute applicable to Kawleski that connects the release to extended supervision to the end of the sentence; the applicable statutes connect the release to extended supervision only to the end of the term of extended supervision portion of the bifurcated sentence.

¶43 Finally, the State cites *State ex rel. Ludtke v. Department of Corrections, Division of Probation and Parole*, 215 Wis. 2d 1, 572 N.W.2d 864 (Ct. App. 1997). There, this court ruled that the parole statutes noted above did not entitle the defendant to sentence credit for the time he was on parole for the purpose of setting his maximum discharge date. *Id.* at 5-12. This case is inapposite because it interpreted and applied parole statutes that are different from the bifurcated sentence statutes that apply to Kawleski, and because it addressed sentence credit, which is not at issue here. *Ludtke* is also unavailing because, there, the court rejected the defendant's argument for sentence credit that would have entitled him to his original maximum discharge date, *id.* at 4, in contrast to Kawleski, who does not argue that he is entitled to his original maximum discharge date.

¶44 In sum, we conclude that, when Kawleski was released to extended supervision after reconfinement on July 2, 2022, the period of extended supervision to be served equaled the term of extended supervision portion of the bifurcated sentence minus the time he had already served on extended supervision. It is undisputed that that calculation results in a maximum discharge date of February 10, 2028.

## II. Separation of Powers

¶45 We turn to Kawleski's constitutional argument. He argues that he is entitled to release now, earlier than the maximum discharge date of February 10, 2028, because he was unlawfully reconfined following the second revocation of his extended supervision. Kawleski argues that he was unlawfully reconfined because the statute applicable to his second reconfinement proceeding in 2018, which remains in effect, violates the constitutional separation of powers doctrine by providing that the executive branch—either the division of hearings and appeals in the department of administration, or the department of corrections— shall order the period of reconfinement and not a circuit court. *See* WIS. STAT. § 302.113(9)(ag)-(am). Accordingly, his argument continues, that time served in unlawful reconfinement should count as time served on extended supervision, such that he has now served his entire sentence.

¶46 "When a party challenges the constitutionality of a statute, we begin with the presumption that the statute is constitutional. The party challenging the constitutionality of a statute has the burden to show beyond a reasonable doubt that the statute is unconstitutional. Any doubts about the constitutionality of a statute are resolved in favor of the statute." *State v. Horn*, 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999) (citations omitted).

22

¶47    "'The doctrine of separation of powers, while not explicitly set forth in the Wisconsin constitution, is implicit in the division of governmental powers among the judicial, legislative and executive branches.'" ***Barland v. Eau Claire County***, 216 Wis. 2d 560, 572, 575 N.W.2d 691 (1998) (quoted source omitted); ***Horn***, 226 Wis. 2d at 643 (quoted source omitted).  The separation of powers doctrine "'envisions a government of separate branches sharing certain powers.' 'In these areas of shared power, one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's exercise of its power.'" ***Barland***, 216 Wis. 2d at 573 (citation and quoted sources omitted); *see* ***Kaul v. Wisconsin State Legislature***, 2025 WI 23, ¶14, __ Wis. 2d __, __ N.W.3d __ ("When powers are shared between different branches, … it still may violate the constitution if the exercise of power unduly burdens or substantially interferes with another branch's exercise of its constitutional powers."  (citing ***Horn***, 226 Wis. 2d at 645)).

¶48    "The majority of governmental powers lie within these 'great borderlands' of shared authority[;] … [n]evertheless, 'each branch has a core zone of exclusive authority into which the other branches may not intrude.'  Although finite and restricted in size, these core zones of authority are to be 'jealously guarded' by each branch of government." ***Barland***, 216 Wis. 2d at 573 (citations and quoted sources omitted); *see* ***Horn***, 226 Wis. 2d at 643 ("Each branch has exclusive core constitutional powers into which other branches may not intrude."). "Therefore, as to these areas of [exclusive] power, we do not employ the undue burden or substantial interference test because '*any* exercise of authority by another branch of government is unconstitutional.'" ***Barland***, 216 Wis. 2d at 573-74 (quoted source omitted); *see* ***Kaul***, 2025 WI 23, ¶14 ("If a branch attempts to usurp the core powers of another branch, it is per se unconstitutional."); ***id.***, ¶47

23

(concluding that the legislature usurped the core power of the executive branch to execute the law by granting "to itself a role in executing the law by mandating that settlements receive pre-approval from [the Joint Finance Committee]").

¶49   Pertinent here, "[i]t is settled that sentencing in Wisconsin is an area of shared powers….  'It is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the courts to impose the penalty; while it is the function of the executive [branch] to grant paroles and pardons.'" *Horn*, 226 Wis. 2d at 645-46 (citation omitted) (quoting *Drewniak v. State ex rel. Jacquest*, 239 Wis. 475, 488, 1 N.W.2d 899 (1942)); *Kaul*, 2025 WI 23, ¶13 (also quoting *Drewniak*, 239 Wis. at 488).

¶50   The statutory provision that identifies the entity that orders reconfinement of a defendant after revocation of extended supervision has gone through several iterations since it was first created.   WISCONSIN STAT. § 302.113(9)(a) (1997-98) authorized the division of hearings and appeals or the department of corrections to order reconfinement.   1997 Wis. Act 283, § 207. Specifically, § 302.113(9)(a) (1997-98) provided that, if a person violates a condition of extended supervision, the division of hearings and appeals in the department of administration after a hearing, or the department of corrections if the hearing is waived, "may revoke the extended supervision of the person and return the person to prison … for any specified period of time that does not exceed the time remaining on the bifurcated sentence."

¶51   The statute was amended in 2001 Wis. Act 109, § 397, to authorize the circuit court to order reconfinement.   Specifically, WIS. STAT. § 302.113(9)(am) (2001-02) stated:

24

> If the extended supervision of the person is revoked, the person shall be returned to the circuit court for the county in which the person was convicted of the offense for which [the person] was on extended supervision, and the court shall order the person to be returned to prison for any specified period of time that does not exceed the time remaining on the bifurcated sentence.

This amended language applied to Kawleski's reconfinement proceeding in 2005. *See* WIS. STAT. § 302.113(9)(am) (2003-04) (same language as 2001-02 version).

¶52 The legislature amended the statute again in 2009 to return the decision to order reconfinement after revocation to the division of hearings and appeals or the department of corrections. 2009 Wis. Act 28, § 2726. The amended language, which remains unchanged in the current statute, WIS. STAT. § 302.113(9)(am), states: "If the extended supervision of the person is revoked, the reviewing authority shall order the person to be returned to prison for any specified period of time that does not exceed the time remaining on the bifurcated sentence." The "reviewing authority" is defined in § 302.113(9)(ag) as "the division of hearings and appeals in the department of administration, upon proper notice and hearing, or the department of corrections, if the person on extended supervision waives a hearing." It is the language in § 302.113(9)(am), which vests the reconfinement decision with the executive branch, that Kawleski argues violates the separation of powers doctrine.

¶53 Kawleski's separation of powers argument proceeds as follows. The power to impose a sentence is exclusive to the judiciary. Because the reconfinement order encompasses the decisions of whether a defendant should be sent to prison and for how long, the legislature has in WIS. STAT. § 302.113(9)(am) improperly delegated exclusive judicial authority to the executive branch. Kawleski cites in support *Brown*, 298 Wis. 2d 37, ¶28 ("a sentencing hearing and a reconfinement hearing … are closely akin to each other,

because both determine whether a person should be sent to prison and for how long"); *id.*, ¶20 (sentencing encompasses reconfinement).

¶54    In response, the State argues that sentencing is a power shared among the three branches, relying primarily on ***Horn***, 226 Wis. 2d at 645, 647, 653 ("[i]t is settled that sentencing in Wisconsin is an area of shared powers," and the revocation of probation falls within those shared powers).  In addressing the decision to revoke a defendant's probation, the court explained:

> [O]nce a defendant has been charged with a crime, tried, defended, convicted, sentenced, and gone through an appeal if desired, the litigation is over and the judicial process has ended.  Whether a convicted defendant is sentenced to prison or the circuit court imposes probation, "[t]he adversary system has terminated and the administrative process, vested in the executive branch of the government, directed to the correctional and rehabilitative processes of the parole and probation system has been substituted in its place."  The judiciary phase of the criminal process—imposing a penalty—is complete.

*Id.* at 650 (citations omitted).

¶55    Both parties make potentially persuasive arguments on the merits of the constitutional issue.  However, we do not address those arguments because, even if we were to rule in Kawleski's favor on the merits, he fails to show that he would be entitled to release earlier than his properly determined maximum discharge date, as established in our discussion on the first issue.  *See **Adams Outdoor Advert., Ltd. v. City of Madison***, 2006 WI 104, ¶91, 294 Wis. 2d 441, 717 N.W.2d 803 (courts ordinarily refrain from deciding the merits of constitutional issues when other resolutions are available).

¶56    Explaining further, Kawleski argues that, because he was unlawfully reconfined for a period longer than the time now remaining until that maximum

discharge date, he should be released now. That is, Kawleski asks that we count the time that he served on reconfinement as time served on extended supervision. However, he provides no legal authority for treating the reconfinement time that he served as extended supervision time so as to entitle him to a maximum discharge date earlier than what we have determined is February 10, 2028.[9]

## CONCLUSION

¶57 For the reasons stated, we affirm the circuit court's order denying Kawleski's petition for a writ of habeas corpus, but on the ground that Kawleski's maximum discharge date is February 10, 2028.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.

---

[9] Because we affirm on this issue, we do not address the State's thinly developed argument that Kawleski forfeited his separation of powers challenge.